## HILL vs. TRAINER.

*May 14 — May 27, 1880.*

PARTNERSHIP: BANKRUPTCY. *Discharge of one partner does not affect liability of co-partner for debt of firm. Effect on mutual liability of partners.*

Where one of two former partners is under obligation to the other to pay a partnership debt, his discharge in bankruptcy, though obtained in pursuance of a *composition* with his creditors, including a creditor of the former firm, while it relieves him from his obligation to his former partner to pay the firm debt, does not discharge such former partner from liability for the unpaid balance of such debt; and a new promise by the bankrupt to his co-debtor, made pending the bankruptcy proceedings or afterwards, to pay such balance, is binding.

APPEAL from the Circuit Court for *Crawford* County.

Plaintiff, having been compelled in 1876, as he avers, to pay a certain sum as balance due M. E. Fuller & Co., of Madison, on notes given them in 1871 by himself and defendant as partners in business (under the firm name of Trainer & Hill), brought this action to recover the amount so paid, alleging a contract between himself and defendant, at the time the partnership was dissolved, by which the latter agreed to pay said notes. The answer contained a general denial, and set up a discharge of defendant in bankruptcy, in 1875.

The case is thus further stated by Mr. Justice TAYLOR:

"The evidence shows that previous to January, 1872, the appellant and respondent were partners in business; that some time in January, 1872, they dissolved partnership, *Trainer* retaining most of the assets of the firm, and binding

himself, in writing, to pay and settle all the debts of the firm and save the appellant harmless as to such debts. The following is a copy of the agreement of the parties, made at the time of the dissolution of the partnership:

"'This indenture, made and concluded this 23d of January, 1872, by and between *James C. Trainer*, party of the first part, and *A. A. Hill*, party of the second part, witnesseth: That for and in consideration of the sum of $1,500, to me, the party of the second part, in hand paid by the party of the first part, the receipt whereof is hereby acknowledged, I, the said party of the second part, hereby assign and set over to the party of the first part all my right, title and interest in and to the firm of Trainer & Hill. And it is hereby agreed that the said *J. C. Trainer* is to pay all liabilities of the said firm of Trainer & Hill, and to have all debts, dues and demands owing to said firm, excepting those sold and turned over to said *Hill* for part liquidation of the said sum of $1,500.   J. C. TRAINER.

A. A. HILL.'

" The evidence also shows that in 1871, and before the dissolution, the partners had given their notes to M. E. Fuller & Co., one for $200 and one for $100, due January 1, 1872; and also one for $204.43, due November 1, 1871; that a portion of these three notes remained unpaid in 1876, and the holders presented the notes to the plaintiff, and he paid thereon the sum of $141; and for that amount and the interest thereon the plaintiff demanded judgment.

"Upon the trial, the defendant showed that, after the dissolution of the partnership, he became insolvent and was discharged from his debts in bankruptcy; and introduced his discharge in bankruptcy in evidence, of which the following is a copy:

"'District Court of the United States for the Western District of Wisconsin. In the matter of *J. C. Trainer*, of Prairie du Chien, Crawford county, Wisconsin, bankrupt. In bankruptcy.

Hill vs. Trainer.

"' *Western District of Wisconsin — ss.:*

"' Whereas *J. C. Trainer* has been duly adjudged a bankrupt under the act of congress establishing a uniform system of bankruptcy throughout the United States, and appears to have conformed to all the requirements of the law in that behalf, it is therefore ordered by the court that said *J. C. Trainer* be forever discharged from all debts and claims which by said act are made provable against his estate, and which existed on the 29th day of November, 1873, on which day the petition for adjudication was filed by his creditors, excepting such debts, if any, as are by said act excepted from the operation of a discharge in bankruptcy.

"' Given under my hand and the seal of the court, at Madison, in said district, on the 13th day of February, 1875.

[L. S.]                    JAMES C. HOPKINS, Judge.'

"Defendant then rested his defense.

"The plaintiff then gave in evidence a promise made on the part of the defendant, both during the pendency of the proceedings against him in bankruptcy and after his discharge, to pay and settle this claim of Fuller & Co. and protect the plaintiff against the same. To rebut this evidence on the part of the plaintiff, the deposition of the defendant was read in evidence on his part, and among other things he testified: 'I think about two weeks after my discharge in bankruptcy I met plaintiff in Prairie du Chien, near my house. He asked me if I had settled up and got through bankruptcy, and if I had settled with the creditors, and upon what terms. I told him I had obtained my discharge in bankruptcy; and he then asked me if all the creditors had signed a petition for discharge, and if Fuller & Co. had signed my petition and discharge, and if I had settled with them; and I said they had, and that Fuller & Co. had signed off with the rest of the creditors, and I had settled with Fuller & Co. I then told him I was going away to California, and all the papers relating to my discharge and settlement were of record in Madison, and if he wanted he

could go there and get a copy at any time.   I never, at any time after my discharge in bankruptcy, or while said bankruptcy proceedings were pending, or at any other time or times whatever, said to the plaintiff that the notes of Fuller & Co., executed by the firm, had been fully paid by me.   I never told him anything of the kind.   I never at any time stated to or promised plaintiff that I would pay said notes, or any of them, or that he need not give himself any uneasiness about them.   I never made any such representation, but, on the contrary, at the time we had our last conversation, plaintiff knew that I had settled with Fuller & Co. for fifty cents on the dollar, and had been discharged in bankruptcy.   I am not certain as to the exact amount for which Fuller & Co. settled in bankruptcy proceedings, but the papers will show.   I think it was fifty cents on the dollar.   Whatever the amount was, I informed plaintiff of it in my last conversation with him.'

"The learned circuit judge instructed the jury, amongst other things, as follows:

"'1. A promise to pay a debtor a specific debt, made after an adjudication in bankruptcy, but before discharge, is such a promise as may avoid the effect of a discharge.

"'2. A promise to pay a debt after a discharge is valid and may be enforced.'

"The third, fourth, fifth and sixth instructions are not material to the points discussed in this opinion.

"'7. A statement made to a joint co-debtor, pending bankruptcy proceedings, that he would see the joint debts all settled, he at the time of making such statement resting under a previous valid agreement to pay the joint debts, is legally bound by his promise to protect his joint debtor against the liability referred to.   If he settles it in any way so that his co-debtor is no longer bound legally to pay it, he complies with his understanding.

"'8. In this case, did the defendant promise to pay those notes of Trainer & Hill?   The plaintiff says he did; the de-

fendant, it is claimed, says he did not.   Which will you believe?

" ' 9. If you find that the promise was made by defendant to plaintiff to pay these notes, or settle them with Fuller & Co., the next question is, Has the plaintiff shown that the defendant did not settle them?

" ' 10. The defendant says he did settle them.   If he did, he is clear of liability.

" ' 11. The plaintiff says that he paid $141.16 to Fuller & Co. on these notes.   If *Trainer* had settled them before this, it was an uncalled for act of the plaintiff, and he cannot recover of the defendant.   Is there any evidence showing, or tending to show, that *Trainer* had failed to settle the notes, as against his statement that he had settled them with Fuller & Co?'

"The plaintiff requested the court further to instruct the jury:

" ' 1. The proceedings in bankruptcy of *Trainer*, and the certificate of discharge as a bankrupt, would not prevent Fuller & Co. from collecting these notes, or the balance due on them, of *Mr. Hill;* and if he did not pay these voluntarily, they could collect the balance of him.'   The court gave the instruction, with this qualification added:  ' This is true, that they could collect the balance unless *Trainer* had settled them. But in that case the discharge would release *Trainer* as against *Hill*, unless there was such a subsequent promise as would bind him.'   The plaintiff excepted to the modification given by the court.

" ' 2. If the jury believe that a short time before defendant's discharge in bankruptcy, on plaintiff speaking to defendant in reference to his putting in his claim before the bankrupt court, defendant told plaintiff he need not do so, but that he, defendant, would settle it, such a statement by defendant, especially if frequently repeated in substance by him to plaintiff, is evidence to show a new promise by the defendant to de-

feat the bar of the certificate in bankruptcy with respect to claims referred to in such statement.' The court gave the instruction with these qualifying words added: 'Unless it appears that he did settle it.' The plaintiff excepted to the qualifying words. He also excepted to instructions numbered 8, 9, 10 and 11."

The defendant had a verdict; a new trial was refused; and plaintiff appealed from a judgment on the verdict.

For the appellant there was a brief by *J. T. & Geo. Mills*, and oral argument by *J. T. Mills:*

Even if the defendant mistook the legal effect of his discharge in bankruptcy, plaintiff was not responsible for such mistake, and could still rely upon his promise. *Town of Rochester v. Alfred Bank*, 13 Wis., 432; *Danaher v. Prentiss*, 22 id., 318. The court, in its charge to the jury and in its modification of the instructions asked by plaintiff, assumed that there was testimony to the effect that defendant had "settled" the claims in suit before plaintiff took them up. Taking this word in the sense of "paid in full," as evidently intended by the court and understood by the jury, there was no such evidence; and the jury were manifestly misled. A promise by which a creditor is led to refrain from presenting his claim before the bankrupt court, will bar the defense of the certificate of discharge. *Pratt v. Russell*, 7 Cush., 462; *Stilwell v. Coope*, 4 Denio, 225; *Pinkerton v. Bailey*, 8 Wend., 600; *Roberts v. Morgan*, 2 Esp., 736; *Brixo v. Braham*, 1 Bing., 281; *Tooker v. Doane*, 2 Hall, 538; *Hornthal v. McRae*, 67 N. C., 21; *Fraley v. Kelly*, 67 id., 78; *Donnell v. Swaim*, 3 Pa. L. J., 393 (2 Clark, 134); *Corliss v. Shepherd*, 28 Me., 550; *Otis v. Gazlin*, 31 Me., 567.

There was a brief for the respondent by *Thomas & Fuller*, and oral argument by *O. B. Thomas:*

Plaintiff's cause of action, if any, was upon the new promise. This was a promise to pay the debt of another, and unless in writing, expressing the consideration, was void. R. S., sec.

2307. As to the effect of a discharge in bankruptcy, see *Thomas v. Jones*, 39 Wis., 124. Whether defendant's discharge was obtained through fraudulent representations to the plaintiff, is a question which only the federal courts can entertain. *Brigham v. Claflin*, 31 Wis., 607.

TAYLOR, J. This case was tried and submitted to the jury upon the theory, *first*, that a discharge in bankruptcy of one of two co-debtors or joint debtors did not necessarily release the other joint debtor from the obligation to pay the joint debt; *second*, that in this case the discharge of *Trainer*, the defendant, released him from the obligation of his contract with the plaintiff to pay and satisfy the debts of the firm of Trainer & Hill; *third*, that a promise to pay or settle the debts of such firm, made by *Trainer* to *Hill* after he had been declared a bankrupt, or after his discharge, notwithstanding such discharge in bankruptcy, was a valid and binding contract, and, if clearly proved, left *Trainer* in the same condition as to his contract with *Hill*, his partner, to settle and pay such debts, as before his discharge.

These propositions were not seriously contested by either party, and the authorities cited by the learned counsel for the appellant, and many others which might be cited, would seem to establish the judicial soundness of such propositions. With these propositions established as the law of the case, it is insisted on the part of the learned counsel for the appellant, that the court erred in his instructions to the jury on submitting the case. It is insisted that the court erred in qualifying the instructions asked by the plaintiff, above quoted, by submitting to the jury the question whether the defendant had in fact settled these partnership debts, so that the same were fully discharged both as to the plaintiff and defendant; and by submitting as a question of fact for the jury, whether defendant did settle these debts, in his instructions numbered 9, 10, and 11. After a careful examination of the evidence of the defendant

himself, we think there is no evidence upon this question of settlement of these partnership debts by the defendant, which could have been properly submitted to the jury. The evidence of the defendant as to the settlement of these claims all relates to the settlement of them which was made by the bankruptcy proceedings, and not to any settlement outside of such proceedings.

The only evidence bearing upon this question is that of the defendant himself, which is above quoted in the statement of the case. By an examination of this evidence it is clear that the settlement he speaks of was the settlement by and through the bankruptcy proceedings. He says, speaking of the proceedings in bankruptcy, " that Fuller & Co. had signed off with the rest of the creditors, and he had settled with Fuller & Co." Again he says: "I never at any time said these notes of Fuller & Co. had been paid in full by me;" and, again: "I am not certain as to the exact amount for which Fuller & Co. settled in the bankruptcy proceedings, but the papers will show. I think it was fifty cents on the dollar; whatever the amount was, I informed plaintiff of it in my last conversation." These statements very clearly show that there was no pretense on the part of the defendant that he had settled and discharged the debt of Fuller & Co. as against the plaintiff, unless the effect of the proceedings in bankruptcy was such as would discharge their debt both as to himself and the plaintiff.

It was admitted that the discharge introduced in evidence on the part of the defendant was not of itself evidence of the discharge of the plaintiff from all liability to pay the balance due on the notes of Fuller & Co. against the firm of Trainer & Co.; and the only other evidence in the case, which had any bearing upon the nature of the proceedings in bankruptcy, was the evidence of the defendant that Fuller & Co. had signed his petition for a discharge; that they had signed off with the other creditors, and that he had settled with his credit-

ors, in the bankruptcy proceedings, at fifty cents on the dollar. This evidence, it appears, was received without objection; and if it can be construed so as to raise a presumption that the defendant had obtained his discharge in bankruptcy by a compromise with his creditors under the bankrupt law, by paying fifty cents on the dollar, and that in making such compromise Fuller & Co. had voted in favor thereof, then it becomes a question of law for the court, and not of fact for the jury, whether such compromise in bankruptcy was a full settlement and discharge of Fuller & Co.'s debts as against *Hill*. If that evidence is not effectual to raise the presumption above mentioned, then it can have no effect to enlarge the legal effect of the discharge itself.

Admitting, as the most favorable construction which can be given to the testimony of the defendant in his favor, that it shows that he compromised with his creditors, under the bankrupt act, at fifty cents on the dollar, and that Fuller & Co. voted for such compromise and fully assented thereto, still such settlement and discharge in bankruptcy would not discharge *Hill* from his obligation to pay the balance due on the claim of Fuller & Co.; and the learned circuit judge should have so instructed the jury. The English courts have held, under the law concerning compositions in bankruptcy in England (which law is almost literally a copy of our bankrupt act on the same subject), that the surety or co-debtor is not discharged by the creditor owning the joint or secured debt voting for a composition under the statute.

In *Ex parte Jacobs*, 44 L. J., B., 34, Justice JAMES, in delivering the opinion, says: "We entirely agree with the decision of the court of common pleas, and in the reasons they have given for it. We think that a discharge of a debtor under a liquidation or a composition is really a discharge in bankruptcy by operation of law. When a creditor voluntarily agrees to a composition by deed or agreement with the acceptor, it is by his act alone that the acceptor is discharged

and the position of the drawer altered. When, however, a debtor summons his creditors under the 125th and 126th sections of the bankruptcy act, the proper majority of creditors have power to assent to the terms by which the debtor is to be discharged, whether the creditor who is the holder of the bill chooses to attend or not, or whether he chooses to vote or not. The consequence of holding that the owner of a bill could not vote at a meeting of the acceptor's creditors without discharging the drawer, would be that in many cases a great number, and in some cases a majority, of the creditors could not vote at the meeting. On the other hand, if resolutions for liquidation by arrangement or for composition were to contain a reservation of remedies by the creditors against any other person than the debtor, the consequence would be that the debtor would not, either by arrangement or composition, be completely discharged from any of his debts, in respect of which the creditor had a remedy against any other person, which would, we think, be contrary to the intention of the act."

In the case of *Megrath v. Gray*, 43 L. J. (N. S.) in Com. Pleas, 63, the question whether a discharge of one of two partners, by a composition in bankruptcy, discharged his copartner, was decided in the negative, after a very full discussion of the case, and a very elaborate opinion of the court by C. J. Coleridge, who finally concludes his opinion as follows: "Consequently, an order of discharge in all these cases releases only the debtor in whose favor it is given, and leaves his solvent co-debtor liable to be sued separately by a joint creditor who has been a party to the release of the insolvent debtor." The same conclusion was arrived at by the supreme court of New York in the case of *Mason & Hamlin Organ Co. v. Bancroft*, 4 Cent. L. J., 295; 1 Abbott's New Cases, 415. The argument in these cases is, that the discharge had in bankruptcy, through a compromise, has the same and no greater effect as to sureties and joint contractors than the discharge granted in such proceedings without compromise.

Hill vs. Trainer.

The compromise proceedings are held to be a substitute for the ordinary proceeding in bankruptcy for the accomplishment of the same object; and in construing the whole statute together, it must be held that congress did not intend to give any greater or other effect to the discharge obtained through the compromise proceedings than is given to the discharge given in the ordinary way; and as the statute provides that the ordinary discharge shall not affect the creditor's right to proceed against the sureties or joint contractors for the recovery of his debt, the discharge obtained through the compromise does not impair that right. *Knapp v. Anderson*, 15 Nat'l Bank'tcy Reg., 316; *Hall v. Fowler*, 6 Hill, 630; *Holyoke v. Adams*, 10 Nat'l Bank'tcy Reg., 270; *Towle v. Robinson*, 15 N. H., 408; *In re Perry*, 1 Nat'l Bank'tcy Reg., 220; *Payne v. Able*, 4 id., 220; *In re Stevens*, 5 id., 112; *Dorn v. O'Neale*, 6 Nev., 155; *Winslow v. Parkurst*, 1 Root, 268; Blumenstiel's Law and Practice in Bankruptcy, 544-5.

Giving the defendant the benefit of the most liberal construction of his own evidence as to his alleged settlement of the debt of Fuller & Co., in and by the bankruptcy proceedings, it is evident that there was no such settlement of the same as discharged the plaintiff, *Hill*, from his obligation to pay any balance which remained unpaid upon these notes against the firm of Trainer & Hill after the application of all the moneys paid thereon by the said *Trainer*. As the proofs stood on the trial, the court should have charged the jury that the evidence failed to show that the claim of Fuller & Co. had been settled by *Trainer* so as to discharge *Hill* from all liability to pay the same, and that his payment of the balance due on said notes, or any part thereof, to the said Fuller & Co., was not a mere voluntary payment on his part, which *Trainer* was in no way bound to make good to him under his contract to pay the debts of the firm of Trainer & Hill.

It was held, and we think, properly, by the court, that *Trainer's* discharge released him from his obligation to pay those

debts, under his contract with *Hill*. *Mace v. Wells*, 7 How. (U. S.), 272; *Hardy v. Carter*, 8 Humphrey, 153; *Crafts v. Mott*, 4 Coms., 603; *Clarke v. Porter*, 25 Pa. St., 141; *Stedman v. Martinnant*, 13 East, 427; *Cowley v. Dunlop*, 7 T. R., 565; Blumenstiel's Law and Practice in Bankruptcy, 545. Upon the evidence in the case, the only question of fact, therefore, for the jury was, whether the defendant had made any such promise to the plaintiff to pay this debt pending the proceedings in bankruptcy, or after his discharge, as would bind him to the payment thereof notwithstanding his discharge. Upon this question the learned circuit judge gave the proper instructions. The court, however, having submitted the question, as a question of fact for the jury to decide, whether the defendant had not settled the debt of Fuller & Co. in the bankruptcy proceedings, which, as we have said, was error, and having also properly submitted the other question as to the new promise to pay, and the verdict being general, we are unable to say that the jury found in favor of the defendant upon the question of the new promise. They may have found in favor of the defendant upon the ground that the debt was fully settled by the bankruptcy proceedings against the defendant, and that the payment made by *Hill* to Fuller & Co., after the defendant's discharge, was a voluntary payment on his part, without any obligation in law to make the same, and that the defendant was not, therefore, bound to make him good for the amount of such payment. The error is not cured by the verdict, and the judgment must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.