CHARLES F. NESLOR, respondent,

*v.*

WILLIAM K. GROVE et al., appellants.

[Decided June 20th, 1919.]

1. By executing a mortgage representing the lands, otherwise described to be the property of her husband, a wife is estopped from afterwards asserting that the lands were equitably her separate estate, against a creditor of her husband.

2. Where a wife permits her husband to retain title to lands. thereby giving him a false show of credit, she is estopped from asserting that the lands were equitably her separate property against a creditor of her husband.

3. A surety is not discharged by conduct that would otherwise amount to a discharge, if he assents.

4. A corporation creditor is not estopped from asserting its claim because one of its officers and one of its directors stated that the debtor owned a fine property, without stating that the corporation held a mortgage upon it.

On appeal of Second National Bank of Hoboken.

*Mr. Julius Lichtenstein* (*Mr. Frederick N. Eberhard* on the brief), for the appellant.

*Mr. William M. Seufert* and *Mr. Robert H. Southard,* for Mary B. Grove.

*Mr. John M. Enright,* for Globe Tire Co.

The opinion of the court was delivered by

SWAYZE, J.

This is a foreclosure bill. There is no question as to the complainant's mortgage and he is entitled to a decree of foreclosure. The controversy relates to a second mortgage held by the Second

National Bank of Hoboken and a judgment in attachment in favor of the Globe Tire Company. We may pass for the present the question as to the priority between these two liens and deal with the claim of the defendant Mary B. Grove that the mortgaged premises, the title to which is in her, have been discharged from the lien of the bank's mortgage. The situation is this: Prior to July 28th, 1913, the Grove Hat Manufacturing Company was indebted to the bank on notes aggregating $45,000. These notes had been outstanding some time, one certainly since 1911. They were endorsed by William K. Grove, who was the principal man in the hat company. On that day he and his wife, Mary B. Grove, executed the mortgage for $45,000 now in question to Allen N. Terbell, who immediately assigned it to the bank. The mortgage is in the ordinary form. The debt secured thereby is in fact the same debt represented by two notes of the same date, one given by the hat company for $35,000 and one given by Grove for $10,000. These notes took the place of earlier notes of the hat company amounting to $45,000, and it is evident that the object was to make an appearance which would indicate that the bank had not loaned the hat company more than the act of congress permitted. The mortgage contains a covenant which recites that William K. Grove is the owner of the mortgaged premises; it is executed by him and his wife, the defendant Mary B. Grove. Mrs. Grove claims that in equity the property was hers, that it was mortgaged for her husband's debt, and that she occupied the position of a surety and has been released by the conduct of the bank. The history of the title, so far as material to this case, is as follows: Grove bought the land in 1909 with his own money. He is said to have made an oral gift to his wife by way of a Christmas present in 1909, but the title remained in him until March 8th, 1917, when the land was conveyed to his wife. In the fall of 1911, Mrs. Grove built an expensive house on the land with her own money. At that time her husband was obligated to the bank for endorsements of the hat company paper. One note for $10,000 was then outstanding, dated February 3d, 1911. When in 1913 the hat company became financially embarrassed, Mrs. Grove, with the advice of her brother and of her private

counsel, who had been concerned in the settlement of her father's estate, joined in executing the mortgage to Terbell now held by the bank. Her counsel advised her of the situation with the care demanded. He wrote her that as the property stood in her husband's name, the bank could reach it if it were to enforce the notes; that the mortgage did not materially change the situation so far as she and her husband were concerned; that she was not giving them a mortgage on anything which they could not already reach by their claim if disposed to do so; that in consideration of the mortgage the bank was willing to wait a reasonable period for the payment of the notes, but otherwise would press for payment at once; that it would be necessary for her to join in the mortgage in order to release her dower, and that he advised the making of the bond and mortgage. This was an accurate statement of the legal situation. Mrs. Grove's claim of an equitable estate rests upon the parol gift of Christmas, 1909. If her husband was then indebted to the bank on his endorsements of the hat company notes, the predecessors of the present notes, a gift of the land to his wife was fraudulent as to the bank. If he was not then indebted, his wife was estopped to deny his title since she permitted him a false show of credit by leaving the record title in him. In either event, she was estopped by having executed the mortgage representing the property as his for the purpose of securing an extension of time for him, and having thereby secured that extension. The estoppel itself is enough to protect the bank against her present claim of an anterior equitable estate, but the case is stronger against her since the letter of her own counsel and the terms of the mortgage make it clear that she claimed no equitable estate and merely intended to join for the purpose of releasing her inchoate right of dower. We need not consider whether she has any equity by reason of her inchoate right of dower. That right merged in the fee when the deed of March 8th, 1917, was delivered, and no claim by reason thereof is made an issue by the pleadings. Nor could it be made an issue; since the bank is certainly entitled to the security of the mortgaged premises, it is entitled on this foreclosure of the prior mortgage to surplus

money on the sale and the right of the dowress, if any she have, can only be ascertained and protected in an application for surplus money. *Vreeland* v. *Jacobus, 19 N. J. Eq. 231.* Mrs. Grove has no standing as the owner of an equitable estate. The decree must be reversed unless the mortgage has been paid or discharged in some other way. It is suggested first that it was paid by time notes subsequently taken by the bank in renewal of those given at the time of the mortgage. It seems to be thought that the entries on the bank books indicate that the later notes were taken in satisfaction of the debt. We find nothing to indicate any such unusual intent. The entries are only what would be necessary, or at any rate proper, to make a full record of the transactions. The bank retained the mortgage in its possession and there is no suggestion that Grove ever claimed that it had been satisfied. The mortgage on its face is an ordinary mortgage to secure Grove's bond for $45,000 payable July 28th, 1916, *i e.,* one year from date. It does not refer in any way to the hat company notes. The bank in its proof of claim against the hat company did not set forth this mortgage as a security held by it, and this can be justified only upon the theory that the mortgage was given as security for Grove's personal obligations—the individual note for $10,000 and the contingent liability as endorser on the note for $35,000. It makes little practical difference. The benefit of the collateral inured to the bank. As to the $35,000, Grove was certainly in the position of a surety and it seems probable that he was in the same position as to the $10,000 note, the substantial consideration of which was the debt due the bank represented by the note of February 3d, 1911. We may at any rate, in favor of the defendant, assume that Grove was in the position of a surety as to the whole amount; if so, a discharge of the principal would discharge him and discharge the mortgage on his land, now the land of Mrs. Grove. This brings us to the suggestion that the mortgage if not paid has been discharged.

In 1915 the hat company became bankrupt. A composition with its creditors was approved by the bankruptcy court, July 21st, 1915.

The orders of approval directed the payment of fifteen per
cent. to creditors, and the payment of the balance remaining on
deposit to the bankrupt or his attorney. This had the effect
of discharging the bankrupt. *Bankruptcy act, 1918, § 14c.*
The bank assented to this composition. We need not con-
sider whether a composition assented to by the creditor would
release the surety or whether like an ordinary discharge in
bankruptcy it would not alter the liability of the surety. *Bank-
ruptcy act, § 16.* Under similar statutes it has been held in
other jurisdictions that a creditor who assents to a composition
does not thereby discharge the surety. *Megrath* v. *Gray (Lord
Coleridge), L. R. 9 C. P. 216; 43 L. J. (N. S.) C. P. 63;
Ex Parte Jacobs (Lord Justice James), L. R. 10 Ch. 211; 44
L. J. Bankr. 34; Simpson* v. *Henning, L. R. 10 Q. B. 406;
44 L. J. Q. B. 143; Hill* v. *Trainer (Wisconsin, 1880), 5 N.
W. Rep. 926.*

The point has not been decided under the Bankruptcy act of
1898 but the reasoning of the cases cited is applicable. The
question, however, is one of the construction of a federal statute
and would more properly be decided by a federal court, es-
pecially as it is not necessary for us to decide it now.

Grove assented to the action of the bank and on December
29th, 1915, five months after the composition, settled with the
bank by giving his individual note for $30,000 and endorsing
over the note of one Wharton for $2,540.68. A surety is not
discharged by conduct that would otherwise amount to a dis-
charge, if he assents. *Solomon* ads. *Gregory, 19 N. J. Law 112.*
That is the present case. The mortgage therefore still remains
as security for the debt. How much is unpaid is not now a
question. The learned vice-chancellor did not make any decree
on this question and no ascertainment of the amount was neces-
sary on his theory of the case. As the decree must be reversed,
the amount due will have to be ascertained by the court of
chancery when the record is remitted.

The learned vice-chancellor advised a decree that the bank
was estopped from asserting any claim under its mortgage as
against the Globe Tire Company and that the latter's judgment
was a lien next in priority to the complainant's mortgage. The

theory is that Grove was recommended early in 1916 for employment to the Globe Tire Company by Terbell, vice-president and cashier of the bank; that Terbell stated that Grove owned a beautiful piece of property in Orange, but did not say anything about Grove owing the bank money or having a mortgage on the property; and that Eberhard, who was a director of the bank, spoke well of Grove's financial circumstances and of the beautiful home he owned without mentioning the indebtedness to the bank. In short the theory is that Terbell and Eberhard committed a fraud for which the bank is to be held responsible. It seems a rather long shot to give priority to an attachment of March, 1917, on a cause of action which could not have existed before 1916, over a mortgage of July, 1913, by reason of an alleged fraud of two officials of the bank.

The tire company's complaint against Terbell and Eberhard sounds in tort. Its claim is a claim for damages for their alleged fraud. Before the bank can be held responsible for a tort of its officers, it must be shown that they were acting in the real or apparent scope of their authority. The commission of a fraud is not within the express or implied powers of the officers. There is nothing to show that either Terbell or Eberhard had ever before assumed such authority, nor do we think that any one of common sense could ever have supposed that an officer of the bank was under any duty to an outsider to reveal the financial affairs of a customer of the bank. Short indeed would be the tenure of a bank officer who so conducted himself, and in the absence of proof of unusual innocence of business ways on the part of the officers of the Globe Tire Company we cannot believe that they were in any way deceived by the silence of Terbell or Eberhard as to the mortgage. Ostensibly and in fact Terbell and Eberhard seem on the facts of this case to have been acting merely as individuals in a friendly way to get Grove some employment. We need not go into the matter at length since the claim of the tire company if it has a valid claim is one that ought to be established by an action at law. The essential elements of an estoppel are absent.

The decree must be reversed, with costs, and the record remitted for further proceedings in accordance with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—11.