QUALITY LUMBER & COAL COMPANY, Appellant, v. KEMP, Respondent.

*No. 185. Argued March 30, 1970.—Decided April 28, 1970.*
(Also reported in 176 N. W. 2d 401.)

623

For the appellant there was a brief and oral argument by *N. George De Dakis* of La Crosse.

For the respondent there was a brief by *Johns, Flaherty, Harman & Gillette* and *Robert D. Johns,* all of La Crosse, and oral argument by *Robert D. Johns.*

WILKIE, J.   A single issue is dispositive of this appeal: Was there sufficient evidence for the jury to find that defendant, after the discharge in bankruptcy, made an oral promise to plaintiff to pay the amount due?

It is well settled that in determining whether the trial court was in error in directing the verdict, the evidence is to be construed in the light most favorable to the party against whom the verdict was directed.[1] Furthermore, a verdict should only be directed against a plaintiff where plaintiff's evidence, given the most favorable construction it will reasonably bear, is insufficient to sustain a verdict in plaintiff's favor.[2] The precise question in this case is: Was there sufficient evidence for the jury to find a revival of the debt?

---

[1] *Olson v. Sentry Ins. Co.* (1968), 38 Wis. 2d 175, 156 N. W. 2d 429, and cases cited therein.

[2] *Wallow v. Zupan* (1967), 35 Wis. 2d 195, 150 N. W. 2d 329, and cases cited therein.

In *Lupinski v. Fischer*,[3] this court quoted with approval the language used in *Allen v. Ferguson*,[4] an old United States Supreme Court decision regarding the revival of a debt discharged in bankruptcy:[5]

" 'All the authorities agree in this, that the promise by which a discharged debt is revived must be clear, distinct, and unequivocal. It may be an absolute or a conditional promise, but in either case it must be unequivocal, *and the occurrence of the condition must be averred if the promise be conditional.* . . . Nothing is sufficient to revive a discharged debt unless the jury are authorized by it to say that there is the expression by the debtor of a clear intention to bind himself to the payment of the debt. . . .' " (Emphasis added.)

It is clear that a debt discharged in bankruptcy can be revived by a new promise, whether the promise be oral or written.[6] However, the promise must be definite, distinct, express and unambiguous.

The trial court here was correct in finding there was no such promise and that there was no evidence to support the jury finding to the contrary.

McKenzie, who was Kemp's attorney at the time of bankruptcy and who subsequently drafted the summons and complaint for Quality against Kemp, testified that Kemp was reluctant to file bankruptcy at first "because he [Kemp] actually didn't know what he wanted to do with the Quality account; he wanted to leave the account completely out of the bankruptcy, that's what his original statement to me was, to leave them com-

---

[3] (1949), 255 Wis. 182, 185, 38 N. W. 2d 429.

[4] (1873), 85 U. S. (18 Wall.) 1, 3, 21 L. Ed. 854.

[5] *See also France v. Sullivan* (1937), 223 Wis. 477, 271 N. W. 42; *Graham v. Dreutzer* (1890), 75 Wis. 558, 44 N. W. 776; *Hill v. Trainer* (1880), 49 Wis. 537, 5 N. W. 926.

[6] *See generally,* 8 Remington, *Bankruptcy,* p. 133 *et seq.,* sec. 3288 *et seq. See also* Annot. (1931), 75 A. L. R. 580.

pletely out, and actually I prevailed upon him to file it as a thousand dollars, . . . . He told me to tell them [Quality] he was only going to file for a thousand on the claim, and that they would get their money, all but the thousand, and that he'd pay after the bankruptcy was over; . . . ."

McKenzie further testified that Kemp told him that "He [Kemp] thought by maybe Christmas or the first of the year that he would be in good shape and be able to start paying them back at that time."

On the other hand, Harold Kemp testified that he had never authorized McKenzie to contact Quality Lumber; that he told McKenzie that he owed Quality a considerable amount of money and that McKenzie suggested he list them for one thousand dollars so that if they were listed and it went through bankruptcy court, he would be free and clear of all his debts. This is what he intended to achieve by going through bankruptcy.

In addition to the testimony of McKenzie, Curtis Smith, secretary-treasurer of the plaintiff, also testified on behalf of the plaintiff. Smith testified that although Kemp never personally told him he was going to pay the amount owed, he (Smith) did have several conversations with McKenzie as Kemp's lawyer after the discharge in bankruptcy, concerning the debt. In essence, Smith testified it was his understanding from what McKenzie told him that Kemp would pay the debt owed to the plaintiff "when he got back on his feet."

It is undisputed that neither Kemp nor McKenzie ever executed any written memorandum concerning payment of the debt. This lack of a writing as evidence of the alleged promise is, of course, not fatal to plaintiff's case since this is not within the statute of frauds. Without a writing, however, serious evidentiary problems are present.

Viewing this case in a light most favorable to the plaintiff's position, it is clear that what is present is an instruction from Kemp to McKenzie to tell Smith that

the debt would be paid when Kemp got back on his feet. Even assuming that this is definite, express, distinct and unambiguous,[7] it is, at best, a conditional promise. The promise may be conditional and yet binding providing the condition is definite.[8] A promise to pay as soon as the bankrupt is able is a valid conditional promise unless it is merely a general declaration of good intentions to pay on the part of the bankrupt.[9]

The instant case does not appear to be merely a general declaration of good intentions on the part of Kemp. However, it does not follow that this promise can be enforced. Whenever the new promise is dependent upon a condition or contingency this fact must be stated in the pleading and it must be averred and proved that the condition has been performed or that the contingency has happened.[10]

In the instant case, not only is there no allegation in the pleadings that the condition (*i.e.*, Kemp gets back on his feet) has been met, there is no proof that this condition has been fulfilled. The only evidence that this condition might have been met is Kemp's own testimony that he is working for a construction company. However, proof that he has a job does not necessarily mean that he is "back on his feet."

The trial court was of the opinion that the testimony of McKenzie as to what the promise was was cancelled out by the testimony of Smith as to what he understood the promise to be. We agree. McKenzie's interpretation of the promise is immaterial as long as Smith's interpretation as an officer of the plaintiff was that the promise was conditional. Smith's interpretation must have come from McKenzie since Smith had no contact with Kemp. Were it not for Smith's testimony and the requirement that the evidence must be viewed most favorably to the

---

[7] *See Lupinski v. Fischer, supra*, footnote 3.

[8] *See generally, Allen v. Ferguson, supra*, footnote 4.

[9] 1 Collier, *Bankruptcy* (14th ed.), p. 1758, sec. 17.34.

[10] *See generally, Lupinski v. Fischer, supra*, footnote 3.

plaintiff, it would be difficult to find any promise at all here. Kemp denies making any promise; McKenzie claims that he did. Yet McKenzie drafted the original pleadings for the plaintiff in this case making no mention of a promise from Kemp to pay Quality.

The trial court was not in error in directing a verdict for the defendant.

We cannot close our discussion of this case without joining the trial court in questioning some of Attorney McKenzie's activities associated with this litigation. The record is unclear as to exact dates, but it does appear that prior to representing Kemp on his bankruptcy, McKenzie represented Quality Lumber, and that there may have been some concurrent representation of both. Smith recommended McKenzie to Kemp who was looking for a lawyer to do collection work for him. McKenzie represented Kemp from about September, 1964, until October of 1965.

The record reveals that McKenzie apparently failed to fully recognize his responsibilities to either Kemp or Quality. One potential conflict of interest that McKenzie apparently failed to recognize was in representing Kemp in the bankruptcy at a time when Kemp was indebted to Quality, who had been his client. Another conflict apparently unrecognized by McKenzie was in representing Quality and drafting the pleadings against Kemp to whom he had just given legal assistance during the bankruptcy proceedings. The entire controversy arose out of alleged actions taken by McKenzie while he was representing Kemp and on Kemp's behalf. This seeming insensitivity to his role as a pivotal witness in the case is difficult to understand. Indeed, it was only upon the trial court's suggestion that he be replaced as attorney for Quality that McKenzie stepped out of the case.

*By the Court.*—Judgment affirmed.