STEINHORST, Appellant, v. H. C. PRANGE COMPANY, Respondent.

No. 215. *Argued October 8, 1970.—Decided November 6, 1970.*
(Also reported in 180 N. W. 2d 525.)

For the appellant there were briefs by *Allan & Storck* of Mayville, and oral argument by *Robert E. Storck.*

For the respondent there was a brief and oral argument by *Joseph D. Donohue* of Fond du Lac.

HALLOWS, C. J.   On August 28, 1968, Miss Steinhorst, while walking in Prange's store on a white vinyl floor in an aisle next to the men's cosmetic counter, slipped and fell.  She slipped on white shaving foam which came from an aerosol can on a self-serve men's cosmetic counter.  This counter displayed various brands of aerosol shaving foams; a companion counter displayed colognes and after-shaving lotions, including "testor bottles" which Prange encouraged the public to sample. Miss Steinhorst, who was seventy years of age, sustained a fracture of her right wrist and of both the tibia and fibula in her right leg.  She was confined to her bed for over three months and is now required to use crutches to walk.

The trial court granted a new trial in the interest of justice because it thought the evidence, exclusive of Exhibit 10 (a report to Prange's insurance company), did not show that Prange had constructive notice of the shaving foam on the floor and that the accident report, without being explained, could totally influence the jury to the point where it had to conjecture and speculate on the question of constructive notice. Ordinarily, an order for a new trial in the interest of justice will be affirmed unless there is a showing of an abuse of discretion on the part of the trial court. *McPhillips v. Blomgren* (1966), 30 Wis. 2d 134, 140 N. W. 2d 267; *Quick v. American Legion 1960 Convention Corp.* (1967), 36 Wis. 2d 130, 152 N. W. 2d 919. An erroneous view of the law is also a ground for reversal or, as is said in some cases, amounts to an abuse of discretion. *Lambrecht v. State Highway Comm.* (1967), 34 Wis. 2d 218, 225, 148 N. W. 2d 732. Consequently, if the trial court was in error, and we think it was, in its view of the law of constructive notice, the order granting the new trial must be reversed.

The safe-place statute, sec. 101.06, requires the place of employment to be kept as safe for frequenters as the nature of the premises will reasonably permit. There is no question that Miss Steinhorst was a frequenter, that the retail store was a place of employment, that she slipped on shaving foam on the floor and that she received injuries. The issue is whether Prange had sufficient notice of the shaving foam on the floor to warrant being held negligent for failing to correct the dangerous condition. While an operator of a retail store catering to the public is not an insurer of the premises, nevertheless he is required to keep such premises as safe as their nature will reasonably permit. *Paaske v. Perfex Corp.* (1964), 24 Wis. 2d 485, 129 N. W. 2d 198; *Zernia v. Capital Court Corp.* (1963), 21 Wis. 2d 164, 124 N. W. 2d 86, 125 N. W. 2d 705. The

balance between the concepts of requiring safety for the public but not requiring absolute liability without fault is sometimes hard to determine and is influenced by the nature of the premises and the type of use made of the premises by modern business operations. The doctrine of constructive notice was adopted by the courts to inject the basis of fault in the statute which was framed in absolute terms. *Caldwell v. Piggly Wiggly Madison Co.* (1966), 32 Wis. 2d 447, 145 N. W. 2d 745; *Boutin v. Cardinal Theatre Co.* (1954), 267 Wis. 199, 64 N. W. 2d 848; *Pettric v. Gridley Dairy Co.* (1930), 202 Wis. 289, 232 N. W. 595.

The doctrine first dealt with obvious failures to repair defects in the physical structure of the premises or its equipment. For example, Boutin involved the lack of the seat cushion of a theater seat which had been removed. Sometimes, the unsafe condition was created in part by climatic conditions beyond the control of the owner as in *Zernia v. Capital Court Corp., supra;* or the unsafe condition was a temporary or transitory condition as in *Krause v. Veterans of Foreign Wars Post No. 6498* (1960), 9 Wis. 2d 547, 101 N. W. 2d 645.

In these cases a longer length of time has been allowed to discover and correct the unsafe condition under the doctrine of constructive notice than in the more recent cases where the unsafe condition is caused or occasioned by the method of doing business and therefore under more control of the occupant of the premises. In this age of supermarkets of every description with their self-serve counters, the increase in accidents, like increased thefts, have come to be looked upon as a hazard of doing a self-serve business.

We have pointed out that when an unsafe condition, although temporary or transitory, arises out of the manner of doing business by the occupant of the premises or may be reasonably expected to occur from his method of operation, a short period of time and pos-

sibly no appreciable period of time under some circumstances need exist to constitute constructive notice. *Uhrman v. Cutler-Hammer, Inc.* (1957), 2 Wis. 2d 71, 85 N. W. 2d 772; *Strack v. Great Atlantic & Pacific Tea Co.* (1967), 35 Wis. 2d 51, 150 N. W. 2d 361.

The trial court was in error in his requirement of proof to establish constructive notice. The unsafe condition here was substantially caused by the method used to display merchandise for sale. In this respect, there is no difference in principle between this case and the *Strack Case* where a customer in a fruit department store slipped on an Italian prune lying on the floor in a self-serve, fruit counter area.

The trial court found a distinction based on the fact the unsafe condition in *Strack* was caused by the accidental conduct of a shopper. But whether the shaving soap got on the floor accidentally or through negligence of a shopper, or intentionally by "boys playing around," such conduct should have been foreseen by Prange. On at least five previous occasions, shaving soap from this self-serve counter had been found on the counter. It is reasonable to infer that sooner or later soap would be on the floor. A clerk saw boys playing around the counter fifteen minutes before Miss Steinhorst slipped. The clerk believed the shaving foam on the floor came from this activity. There is no evidence the aisle was checked for safety, although this type of self-serve operation should call for periodic inspection. We think the evidence was sufficient to put Prange on notice that its method of operation could reasonably create an unsafe condition to the public and Prange must be charged with constructive notice.

During the trial the court admitted in evidence Exhibit 10 as a business record pursuant to sec. 889.25, Stats. This was a written report of the accident made by Prange's employee Robert Brunelle to the insurance company in the ordinary course of business. The report states in response to a question on whether the acci-

dent was due to carelessness "that boys were noticed playing around the men's gift counter and apparently sprayed shave cream on the floor." Brunelle was called adversely by the plaintiff and testified early in the trial concerning the report but was not asked any questions by Prange.

The trial court, in granting a new trial, indicated "playing around" and "apparently sprayed shaving cream on the floor" were not adequately explained in the testimony and led to speculation. This language constitutes an admission against interest on the part of Prange and any explanation was for Prange to make. But, we think the meaning is clear from the context. The terms were used in reference to a question relating to negligence. In relation to a self-serve counter displaying shaving cream in aerosol cans and the finding of shaving soap on the floor, the term "playing around" in connection with boys is definite enough, although circumstantial, to take it out of the field of speculation and to justify the inference the boys sprayed the soap so that it fell on the floor. This is not a case of raising an inference by the failure to call a witness or to cross-examine. *See Schmiedeck v. Gerard* (1969), 42 Wis. 2d 135, 166 N. W. 2d 136. The report was in evidence and adds weight to the finding that Prange had constructive notice.

Upon its review, Prange argues the jury's finding of no negligence on the part of Miss Steinhorst is contrary to the great weight of the evidence. This amounts to an argument that Miss Steinhorst was negligent in regard to lookout. We said in *Zehren v. Woolworth Co.* (1960), 11 Wis. 2d 539, 105 N. W. 2d 563, that a customer in a retail store was not bound as a matter of law to see every defect or danger in his pathway. The displays of merchandise in modern stores are so arranged and are intended to catch the customer's attention and divert him from watching the floor. Here, the floor was white vinyl tile and the shaving foam was also

white—hardly a combination to make the danger notice-able. Miss Steinhorst was walking through the store to the stationery counter and had no reason to look at the floor in front of the men's shaving-cream counter. The public does not expect to shop at its own risk and it is unreasonable to expect a person in a retail store to use the same degree of lookout as he would on a public street. The jury properly answered the negligence question.

Prange also raises the question of the excessiveness of the award of $13,500 damages for personal injuries. For this award of damages to be excessive, it must be so large as to indicate a disregard of the evidence or of applicable rules of law since no question of passion, prejudice, or corruption is raised. *Makowski v. Ehlen-bach* (1960), 11 Wis. 2d 38, 103 N. W. 2d 907; *Kablitz v. Hoeft* (1964), 25 Wis. 2d 518, 525, 131 N. W. 2d 346; *Erdmann v. Frazin* (1968), 39 Wis. 2d 1, 7, 158 N. W. 2d 281. While making an analogy to other cases is sometimes dangerous, nevertheless in *Erdmann* the plaintiff was a sixty-nine-year-old woman who suffered a fractured hip and permanent disability which im-peded her ability to walk and an award of $14,000 was held not to be excessive. Here, Miss Steinhorst was seventy years, sustained multiple fractures and perma-nent injury which impeded her ability to walk because of her disability. She has had to change her usual way of life. We think the award was not excessive and is sustained by the evidence.

*By the Court.*—Order reversed, with direction to the trial court to enter judgment on the verdict in favor of the plaintiff.

CONNOR T. HANSEN, J., dissents.