Arlene KAUFMAN and Edward Kaufman, Plaintiffs-Appellants,

v.

STATE STREET LIMITED PARTNERSHIP, Aetna Casualty & Surety Company, County Market Foods, Inc., d/b/a Pick 'N Save Warehouse Foods, Aetna Casualty & Surety Company and Walgreens Oconomowoc, Inc., Defendants-Respondents,

PRIME CARE HEALTH PLAN, INC., Defendant.

Court of Appeals

*No. 93–0406. Submitted on briefs November 3, 1993.—Decided August 16, 1994.*

(Also reported in 522 N.W.2d 249.)

For the plaintiff-appellant the cause was submitted on the briefs of *Davis & Kuelthau, S.C.*, with *Louis F. Raymond* and *Ernest J. Philipp* of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Borgelt, Powell, Peterson & Frauen, S.C.*, with *W. Ted Tornehl* and *Michael J. Hanrahan* of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J.   Arlene and Edward Kaufman appeal from three judgments, each granting summary judgment to State Street Limited Partnership, Pick 'N Save, their insurers, and Walgreens Oconomowoc, Inc., and dismissing the Kaufmans' complaint, which alleged causes of action for common law negligence and safe-place statute violations arising out of her slip and fall in a parking lot. We affirm.

The facts are undisputed. On the afternoon of September 24, 1988, Mrs. Kaufman parked her car in a parking lot owned by State Street Limited Partnership and leased to Walgreens and Pick 'N Save for use by their customers and employees. While approaching Walgreens she walked over the approximate area where she later fell. According to her deposition testimony, Mrs. Kaufman did not notice a banana on the ground. Walking back to her car approximately forty

minutes later she slipped and fell on a piece of a banana, fracturing her right leg. No evidence was offered in any of the summary judgment submissions relative to the length of time the banana had been on the parking lot, and Mrs. Kaufman said she had "no idea how long it was there."

Arlene and Edward Kaufman filed suit against the defendants alleging common law negligence and violation of the safe-place statute. Walgreens and Pick 'N Save moved for summary judgment, arguing that they had delegated maintenance and upkeep of the parking lot to State Street Limited Partnership pursuant to their lease, which provided in part:

> It is an express condition of this lease that at all times during the continuance of this lease, Landlord shall provide, maintain, repair, adequately light when necessary during Tenant's business hours, clean, promptly remove snow and ice from, supervise and keep available the Parking Areas.

Additionally, all the defendants maintained that as a matter of law they had neither actual nor constructive knowledge of the dangerous condition in the parking lot that caused Mrs. Kaufman to fall.

The trial court granted summary judgment to all the defendants. Specifically, the trial court concluded that Walgreens and Pick 'N Save owed no duty to Mrs. Kaufman under the safe-place statute because they had delegated maintenance duties under the lease contracts with State Street. The court further concluded:

> [T]here is no evidence in this case to justify or require the finding that either Walgreens, Pick 'n Save, or State Street Limited Partnership had

either actual or constructive notice which would require that they are subject to the Safe Place statute or even ordinary negligence.

Section 802.08, STATS., governs summary judgment methodology. That methodology has been set forth in many of our prior cases, *see, e.g., Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476 (1980), and need not be repeated here. We review the trial court decision on summary judgment *de novo. Id.*

Although the party seeking summary judgment must " 'establish a record sufficient to demonstrate . . . that there is no triable issue of material fact on any issue presented[,]' [t]he ultimate burden . . . of demonstrating that there is sufficient evidence . . . to go to trial at all . . . is on the party that has the burden of proof on the issue that is the object of the motion." *Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 290, 507 N.W.2d 136, 139 (Ct. App. 1993) (citations omitted). Once the party moving for summary judgment

> demonstrates that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," the opposing party may avoid summary judgment only by "set[ting] forth specific facts showing that there is a genuine issue for trial."

*Id.* at 291, 507 N.W.2d at 139 (citations omitted; brackets in *Hunzinger*); RULE 802.08(2) & (3), STATS. Further, "once sufficient time for discovery has passed, it is the burden of the party asserting a claim on which

it bears the burden of proof at trial 'to make a showing sufficient to establish the existence of an element essential to that party's case.' " *Id.* at 291-292, 507 N.W.2d at 140 (citations omitted). We conclude that the Kaufmans failed to make a sufficient evidentiary showing in their submissions opposing summary judgment to create a genuine material issue regarding actual or constructive notice.

As the supreme court has explained, "The safe-place statute requires a place of employment to be kept as safe as the nature of the premises reasonably permits." *Strack v. Great Atl. & Pac. Tea Co.*, 35 Wis. 2d 51, 54, 150 N.W.2d 361, 362 (1967). The supreme court also explained, however, that because "the owner of a place of employment is not an insurer of frequenters of his premises, in order to be liable for a failure to correct a defect, he must have actual or constructive knowledge of it." *Id.* (citations omitted). Although the Kaufmans originally alleged both actual and constructive notice, there was no evidence of actual knowledge and, on appeal, they argue only that the defendants had constructive notice of the danger that allegedly caused Mrs. Kaufman's slip and fall.

■

"The general rule is that constructive notice is chargeable only where the hazard has existed for a sufficient length of time to allow the vigilant owner or employer the opportunity to discover and remedy the situation." *May v. Skelley Oil Co.*, 83 Wis. 2d 30, 36, 264 N.W.2d 574, 577 (1978). Ordinarily, constructive notice cannot be found when there is no evidence as to the length of time the condition existed. *See id.* at 35-38 & n.6, 264 N.W.2d at 576-578 & n.6. In this case, therefore, the defendants argue that "because there was no evidence of how long the banana was on the surface of

the parking lot prior to the accident, . . . there is no basis upon which a jury could reasonably conclude that a vigilant owner would have discovered it."

Kaufman argues that, in this case, although the length of time the banana was on the lot was unknown, the indefinite "length of time evidence" was sufficient to survive summary judgment under the exception to the general rule set forth in *Strack*. The issue is a close one, and its resolution requires careful analysis of *Strack* and subsequent cases.

In *Strack*, the plaintiff sued the A & P store under the safe-place statute following her slip "on a little Italian prune" on the floor in front of the frozen food counter. *Strack*, 35 Wis. 2d at 53, 150 N.W.2d at 362. The supreme court affirmed the jury verdict for the plaintiff, rejecting A & P's argument that it did not have constructive notice of the danger. The court stated that although there was "no direct testimony establishing the Italian prune was on the floor longer than five minutes, the jury could reasonably infer it was there for a much longer period of time." *Id.* at 56, 150 N.W.2d at 363.

The supreme court, however, did not rest its reasoning on the possible inference that the prune was on the floor for five minutes or longer. Instead, the court supported its decision by locating the specific facts and circumstances of the case within the theory and purpose of both the safe-place statute and the principle of constructive notice. Thus, several distinct but related principles emerge from the supreme court's rationale:

(1) "[W]hen safe-place liability is to be ascribed to an owner" based on constructive notice, "the defect must exist long enough for a vigilant owner to discover and repair it." *Id.* at 55, 150 N.W.2d at 363.

(2)   When safe-place liability is ascribed on the basis of constructive notice, it can encompass "defects which occurred beyond the control of the owner" such as unexpected temporary or transitory conditions. *See id.*

(3)   "[A] much shorter period of time, and possibly no appreciable period of time under some circumstances, need exist to constitute constructive notice" when either "an unsafe condition, although temporary or transitory, arises out of the course of conduct of the owner or operator of a premises," or when "an unsafe condition, although temporary or transitory . . . may reasonably be expected from [the owner's or operator's] method of operation." *Id.*

(4)   Whether constructive notice exists, therefore, depends not only on the temporal analysis (how long was the prune on the floor and was it long enough for a vigilant owner to discover and remove it), but also, on the specific location and the specific defect or danger, which may have "rendered [the location] not as safe as its nature would reasonably permit." *See id.* at 55-58, 150 N.W.2d at 363-364.

Indeed, in *Strack*, the supreme court conclusion clearly was influenced more by the "nature" of the location and the certainty of everyday conduct inside a grocery store, than by the uncertainty of the length of time the prune might have been on the aisle floor. The court explained:

> More importantly, we think supermarkets which display their produce and fruit in such a way that they may be handled by customers and dropped or knocked to the floor unintentionally is a way of doing business which requires the storekeeper to use reasonable measures to discover and remove such debris from the floor.. . . While the use of self-

service produce displays is not negligence as a matter of law, they do create marketing problems of safety and place upon the store operator the need for greater vigilance if he is to meet the higher than common-law standard of care required by the safe-place statute.

*Id.* at 56-57, 150 N.W.2d at 363.

Three years later, the supreme court revisited the issue and came to the same conclusion in *Steinhorst v. H.C. Prange Co.*, 48 Wis. 2d 679, 180 N.W.2d 525 (1970). In *Steinhorst*, the plaintiff slipped on shaving foam while walking in the aisle of a self-service men's cosmetic counter at a Prange's department store. *Id.* at 681, 180 N.W.2d at 526. Rejecting Prange's argument that it did not have constructive notice, the supreme court explained, "The unsafe condition here was substantially caused by the method used to display merchandise for sale." *Id.* at 684, 180 N.W.2d at 527. Moreover, the court rejected the notion that liability resulting from constructive notice should vary according to whether "the unsafe condition . . . was caused by the accidental conduct of a shopper." *Id.* The court noted that "[o]n at least five previous occasions, shaving soap from this self-serve counter had been found on the counter. It is reasonable to infer that sooner or later soap would be on the floor." *Id.* Thus, the court concluded that, regardless of whether the immediate condition may have been caused by a shopper who spilled the soap, the danger "should have been foreseen by Prange." *Id.*

Thus, if Pick 'N Save had constructive notice, such notice only could have come under the *Strack* exception to the general rule. Otherwise, the absence of any specific "length of time" evidence would preclude liability based on constructive notice. It is only under the *Strack*

exception that "no appreciable time" may be required and, therefore, "length of time" evidence may be unnecessary for constructive notice to exist. We are not persuaded, however, that the *Strack* exception extends to the facts of this case.

Here, as Pick N' Save points out, there was no evidence of how long the banana was in the parking lot, and any conclusion in that regard would be purely speculative. To repeat, the supreme court stated, "The general rule is that constructive notice is chargeable only where the hazard has existed for a sufficient length of time to allow the vigilant owner or employer the opportunity to discover and remedy the situation." *May*, 83 Wis. 2d at 36, 264 N.W.2d at 577. Thus, although *Strack* may be read to delineate an exception to the general rule requiring "length of time" evidence for constructive notice, *Strack* clearly does *not* stand for the proposition that constructive notice *automatically* exists when the condition is present for no appreciable time, or when there is no evidence to remove the temporal estimate from the realm of pure speculation.

In *May*, the supreme court went on to explain, "The length of time viewed as sufficient varies according to the nature of the business, the nature of the defect, and the public policy involved." *May* at 37, 264 N.W.2d at 577. Thus, under *May* we must analyze this case with a fact-specific inquiry focusing on the nature of the "defect" and the nature of "the business"—a piece of banana in a parking lot adjacent to a two store "strip mall"—in comparison to the circumstances and premises considered in *Strack* and subsequent cases.

Both *Strack* and *Steinhorst* emphasized that the slips and falls occurred in aisles *inside* stores.[1] In both

---

[1] Similarly, in *Dykstra v. Arthur G. McKee & Co.*, 92 Wis. 2d 17, 284 N.W.2d 692 (Ct. App. 1979), *aff'd* 100 Wis. 2d 120,

cases, the supreme court connected the concept of constructive notice to the owner's conduct and capacity to both foresee the danger and control the location, and pointed out that a self-service store controls its method of product display and, in a sense, creates the very condition that causes the danger. Given the inevitable mishaps in everyday shopping, spills in the aisles "may reasonably be expected from [the] method of operation," and a failure to immediately clean them up would render the store not "as safe as its nature would reasonably permit." *See Strack*, 35 Wis. 2d at 55-56, 150 N.W.2d at 363. Indeed, in *Gerdmann v. United States Fire Ins. Co.*, 119 Wis. 2d 367, 372, 350 N.W.2d 730, 734 (Ct. App. 1984), we termed the businesses involved in *Strack, Steinhorst,* and *Dykstra* "unique operations."

The Kaufmans have provided no authority to establish the basis on which we could extend the *Strack* exception beyond the doors of the premises absent any "length of time" evidence. The parking lot in this case was not within the exclusive control of the defendants, individually or collectively. Outside, exposed to the comings and goings of countless parkers and shoppers, the lot was subject to potentially dangerous conditions unrelated or only incidentally related to Walgreens' and Pick 'N Save's "method of operation," and to State Street's management of the lot. Pedestrians or motorists could litter the lot. Debris from other locations could blow onto the lot. Rain or snow could make footing dangerous. Although, in the absence of reasonable

---

301 N.W.2d 201 (1981), another safe-place slip and fall case, we concluded that constructive notice existed where the general building contractor and owner negligently failed to keep a concrete floor of a corridor *inside* a building reasonably free from water and sand. 92 Wis. 2d at 29, 284 N.W.2d at 698.

vigilance by an owner, such conditions could produce dangers leading to liability, they do not necessarily or automatically leave a parking lot less safe than "its nature would reasonably permit." *See Strack*, 35 Wis. 2d at 55-56, 150 N.W.2d at 363.

Therefore, we conclude that in this case the unsafe condition did not "arise[ ] out of the course of conduct of the owner or operator of [the] premises," and the unsafe condition could not "reasonably be expected from [the owner or operator's] method of operation." *See Strack*, 35 Wis. 2d at 55, 150 N.W.2d at 363. Thus, the "no appreciable period of time" exception of *Strack* is inapplicable. Accordingly, for constructive notice to exist, the Kaufmans would have to establish that the banana was on the parking lot "long enough for a vigilant owner to discover" and remove it. *See id.* We conclude that because the Kaufmans offered no "length of time" evidence, the submissions on summary judgment failed to establish the existence of an essential element to their case and, therefore, the trial court correctly determined that the defendants did not have constructive notice.[2]

*By the Court.*—Judgments affirmed.

---

[2] Because we decide this case based on the lack of notice, the contractual delegation of the duty to maintain the parking lot by Walgreens and Pick 'N Save to State Street Limited is not dispositive and need not be addressed. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).