Nancy MEGAL, Plaintiff-Appellant,†

v.

GREEN BAY AREA VISITOR & CONVENTION BUREAU,
INC., Valley Forge Insurance Company, and
Tommy G. Thompson, Secretary of the United
States Department of Health and Human Ser-
vices, Defendants-Respondents.

Court of Appeals

*No. 02–2932. Submitted on briefs August 5, 2003.—
Decided October 7, 2003.*

2003 WI App 230

(Also reported in 672 N.W.2d 105.)

† Petition to review granted 12-16-03.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *John C. Peterson* of *Peterson, Berk & Cross, S.C.*, Appleton.

On behalf of the defendants-respondents, the cause was submitted on the brief of *William J. Ewald* and *Tina M. Dahle, Denissen, Kranzush, Mahoney & Ewald, S.C.*, Green Bay, and *Kenneth E. Rusch, O'Hagan, Smith & Amundsen*, Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. Nancy Megal appeals a summary judgment dismissing her claim of a safe-place violation. Megal slipped and fell on a french fry when she was walking down a stairway at the Brown County Veterans Memorial Arena. In order to prevail, Megal must ordinarily be able to prove actual or constructive notice–that the arena knew the french fry was on the

stairway or that the french fry was there long enough so that the arena should have discovered it. Megal can prove neither. Instead, she claims an exception constructive notice requirement: there is a reasonable probability the unsafe condition occurred because of the nature of the business and the manner in which it is conducted. We disagree and affirm the judgment.

## BACKGROUND

¶ 2. On February 6, 1998, Megal attended an ice show at the arena. The arena has 61,000 square feet on three floors. It has the capacity to hold 5,248 people, and on this night 4,220 tickets were sold. Megal sat in the upper level. After the show ended, she was exiting by walking down a stairway. The stairs were crowded and she could not see the stairs in front of her. Megal slipped on a two- or three-inch ketchup-soaked french fry on one of the bottom stairs. She did not see the french fry before she slipped on it, nor did she know how long the french fry had been on the step. As a result of the fall, Megal fractured her left ankle.

¶ 3. The arena does not allow patrons to carry in food or drink from the outside. Patrons can purchase concessions in the lower concourse of the arena beginning one hour before the show starts until approximately fifteen minutes before the show ends. There are no restrictions on where patrons can take their concessions in the arena.

¶ 4. During ice show performances, there are usually two people performing janitorial services. Both persons share responsibilities for cleaning spills throughout the arena and for maintaining the restrooms. There are no formal, written procedures for inspection of the premises. The employees clean the

bathrooms and dust mop the floor near the concession stand, but they usually only clean up spills outside of these areas when a customer or other arena employee reports them.

¶ 5. Megal sued the arena, among other parties, alleging a violation of Wisconsin's safe-place statute, WIS. STAT. § 101.11,[1] and common law negligence. The arena moved for summary judgment, and the trial court granted the motion. With respect to the safe-place violation, the trial court determined Megal could not prove the arena had actual or constructive notice of the dangerous condition, the french fry. With respect to the negligence claim, the trial court concluded it was "pure speculation to argue any procedure or inspection pattern or number of personnel would have been able to locate, remove, and clean up the french fry."

## DISCUSSION

¶ 6. When reviewing a summary judgment, we perform the same function as the trial court, and our review is independent. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). On summary judgment, a court must view the facts in the light most favorable to the nonmoving party. *State Bank of La Crosse v. Elsen*, 128 Wis. 2d 508, 511–12, 383 N.W.2d 916 (Ct. App. 1986). Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 7. The safe-place statute requires a place of employment to be kept "as safe as the nature of the premises reasonably permits." *Strack v. Great Atl. & Pac. Tea Co.*, 35 Wis. 2d 51, 54, 150 N.W.2d 361 (1967). Owners and operators are not liable for an unsafe condition unless they have either actual or constructive notice of the condition. *Id.* at 54–55. Constructive notice generally exists " 'where the hazard has existed for a sufficient length of time to allow the vigilant owner or employer the opportunity to discover and remedy the situation.' " *Kaufman v. State St. Ltd. P'ship*, 187 Wis. 2d 54, 59, 522 N.W.2d 249 (Ct. App. 1994) (citation omitted). What constitutes "a sufficient length of time" depends on the nature of the business, the nature of the defect, and the public policy involved. *May v. Skelley Oil Co.*, 83 Wis. 2d 30, 36–37, 264 N.W.2d 574 (1978). Thus, under the general rule, constructive notice cannot be assigned where it cannot be proved how long a hazardous condition existed. *Kaufman*, 187 Wis. 2d at 59.

¶ 8. There is an exception to the general constructive notice rule, called the "*Strack*" exception. It applies only when there is "a reasonable probability that an unsafe condition will occur because of the nature of the business and the manner in which it is conducted . . . ." *Strack*, 35 Wis. 2d at 57–58. Under those circumstances, an injured person does not have to prove the dangerous condition existed for a sufficient period of time to allow an owner to correct the condition. *Id.* Rather, "a much shorter period of time, and possibly no appreciable period of time under some circumstances, need exist to constitute constructive notice." *Id.* at 54–55.

¶ 9. Megal cannot prove how long the french fry was on the stair. The french fry could have been there for the entire show, part of the show, or could have been dropped by one of the exiting patrons immediately in front of Megal just seconds before she stepped on it. Megal argues this case should fall under the *Strack* exception to the general rule of constructive notice.

¶ 10. Under *Strack*, Megal claims a jury could find the arena liable for her injuries based on either the arena's failure to clean the stairs on which she fell or on the arena's method of operation. Megal argues the method of operation allowed patrons to take concessions anywhere in the arena. She claims a jury could conclude that this creates foreseeable danger because it is a reasonable assumption patrons would drop food at some time. The jury then could conclude it was incumbent on the arena to employ sufficient custodial persons and to create and follow clean-up procedures in order to ensure the premises were as safe as their nature reasonably permits.

## Question of Fact or Question of Law

¶ 11. We must first decide if Megal's argument presents a question of fact, as she claims, or a question of law. If it is a question of fact, summary judgment was inappropriate and a jury must decide the issue. If it is a question of law, summary judgment is an appropriate procedure.

¶ 12. In order to resolve this issue, we must understand the distinction between questions of fact and questions of law.

> The distinction between propositions of fact and conclusions of law is this: Propositions of fact are descrip-

tive; conclusions of law are dispositive. Propositions of fact state history; conclusions of law assign legal significance to that history.

Clarence Morris, *Law and Fact*, 55 HARV. L. REV. 1303, 1329 (1942).

When there is but one account of what happened [however the account is determined], and the application of acceptable rules of law to that account is problematical, a question of law results.

Morris, *supra*, at 1314–15 (quoting Holmes, *Law in Science and Science in Law*, 12 HARV. L. REV. 443 (1899)).

A conclusion of law results when legal effects are assigned to events. A conclusion of law stands for more than the happening of events; it is at least a step in the legal disposal of events. If a rule of law is applied before a conclusion is reached, that conclusion is one of law.

Morris, *supra*, at 1328–29.[2]

¶ 13. Ordinarily, notice is a question of fact left to the jury to answer. *Gerdmann v. United States Fire Ins. Co.*, 119 Wis. 2d 367, 370–71, 350 N.W. 2d 730 (Ct. App. 1984). This is because the facts are generally disputed. Did the proprietor know the french fry was on the stairs? Or how long had the french fry been lying there undiscovered? To use Morris's language, these are descriptive questions–the history, the happening of events. That is why they are questions of fact.

---

[2] Court of Appeals Judges John Decker, Paul Gartzke and Richard Brown used Clarence Morris, *Law and Fact,* 55 HARV. L. REV. (1942), as a primary source for their 1983 Wisconsin Judicial Conference presentation on *Standards of Review for Trial Judges.*

¶ 14. Here, however, there is no dispute about the happening of events. The only question is what legal significance to attach to those events. That is a question of law.

¶ 15. Our conclusion is bolstered by the reported cases. In *Kaufmann*, 187 Wis. 2d at 65, we affirmed a summary judgment dismissing a safe place claim. We concluded as a matter of law that the *Strack* exception did not apply to a banana in a parking lot outside a grocery store. *Id.* Further, in an opinion authored by Chief Justice Hallows—who also authored *Strack*—the supreme court upheld a directed verdict, concluding as a matter of law that *Strack* did not apply to a burned out light in a parking lot. *Low v. Siewart,* 54 Wis. 2d 251, 254, 195 N.W. 2d 451 (1972).

### *Strack*

¶ 16. We must now determine whether *Strack* applies in this situation. Strack was injured when she slipped and fell on a prune that had fallen on the floor of a grocery store. *Strack*, 35 Wis. 2d at 54. The issue was whether the store had sufficient notice that the prune was on the floor. *Id.* The court held:

> [I]n circumstances where there is a reasonable probability that an unsafe condition will occur because of the nature of the business and the manner in which it is conducted, then constructive knowledge of the existence of such an unsafe condition may be charged to the operator and such constructive notice does not depend upon proof of an extended period of time within which a shop owner might have received knowledge of the condition in fact.

*Id.* at 57–58. The grocery store did not have actual notice that the prune was on the floor. However, the store displayed produce in a way that the products were

809

handled by customers and could easily be dropped or knocked to the floor. *Id.* at 56. The store was therefore required "to use reasonable measures to discover and remove such debris from the floor." *Id.*

¶ 17. *Strack* was followed by *Steinhorst v. H.C. Prange Co.*, 48 Wis. 2d 679, 180 N.W.2d 525 (1970). Steinhorst slipped and fell on shaving foam on the floor at a self-serve men's cosmetics counter. *Id.* at 681–82. The court, applying *Strack*, determined that the nature of a self-serve counter called for "periodic inspection." *Id.* at 684. The store therefore had constructive notice of the spill. *Id.*

¶ 18. *Strack* and *Steinhorst* are the only two cases approving the application of the *Strack* exception. We recently analyzed both cases in *Kaufman*. We observed that *Strack* "was influenced more by the 'nature' of the location and the certainty of everyday conduct inside a grocery store, than by the uncertainty of the length of time the prune might have been on the aisle floor." *Kaufman*, 187 Wis. 2d at 61. As to *Steinhorst*, we noted that the court said the unsafe condition "was substantially caused by the method used to display merchandise for sale." *Kaufman*, 187 Wis. 2d at 62 (quoting *Steinhorst*, 48 Wis. 2d at 684). Finally, we are reminded of our observation in *Gerdmann*, 119 Wis. 2d at 734, that the businesses involved in *Strack* and *Steinhorst* were "unique operations." *Kaufman*, 187 Wis. 2d at 64.

¶ 19. The *Gerdmann* case made an accurate observation. Nationally, the exception set out in *Strack* is often referred to as the "mode-of-operation rule." *Id.* In explaining the rule, 62A AM. JUR. 2d *Premises Liability* § 575 at 136 (1990), states the rule recognizes that "carelessness of patrons is to be anticipated in a self-service supermarket operation . . . ."

¶ 20. The courts engrafted the notice require-
ment onto the safe-place statute. The reason was fun-
damental fairness.

> Natural principles of justice would seem to require
> [notice]. . . . This is so in accord with the natural
> instincts of justice that a contrary purpose should not
> be imputed to a legislative act in the absence of an
> unequivocal declaration of such purpose.

*Pettric v. Gridley Dairy Co.*, 202 Wis. 289, 292–93, 232
N.W. 595 (1930).

██

¶ 21. *Strack* created an exception to the ordinary
notice rules. The exception, however, is very narrow. It
has only been applied in self-service situations such as
the produce department of a grocery store (*Strack*) or a
cosmetics counter (*Steinhorst*). More important, it has
been limited to the immediate area where the danger-
ous condition was created, namely at the location of the
self-service. In both *Strack* and *Steinhorst*, the debris
fell immediately adjacent to the area from which it
came. Here, the french fry was well removed from the
area where it was purchased.

¶ 22. If we were to apply *Strack* here, the excep-
tion would swallow the rule. This is a 61,000 square foot
arena with seating for over 5,000 people on three levels.
Patrons were free to take food and drink anywhere in
the arena. How could the arena possibly have patrolled
the entire facility to be on guard for something such as
a spilled french fry? With thousands of patrons exiting
at the end of the show, Megal has not provided a
principled and reasonable response to this circum-
stance that would prevent the injury she sustained.

¶ 23. Consider also the ramifications for other
public places. This exception would then apply to sta-

diums, theaters, restaurants, shopping malls. The list is endless. Imagine, for example, the consequences for Lambeau Field when more than 70,000 people are trying to exit at the end of a football game. Are they all required to sit in their seats until custodians have inspected all the stairways, hallways, aisles and rows? How many custodians must the stadium employ? If we applied *Strack* here, every time someone slipped and fell on a foreign substance in a public place, a jury would have to decide whether an owner or operator would be exposed to liability even if the owner or operator did not know about the substance or have time to discover it.

¶ 24. The safe-place law was never intended to make owners and operators insurers of the public's safety. *Dykstra v. Arthur G. McKee & Co.*, 92 Wis. 2d 17, 26, 284 N.W.2d 692 (Ct. App. 1979). Yet that would be exactly the result if we extended *Strack* to this case.

**Negligence Claim**

¶ 25. Megal also pleaded common law negligence. The trial court granted summary judgment dismissing that claim as well. A negligence claim cannot be maintained when a safe-place violation cannot be established. *Balas v. St. Sebastian's Cong.*, 66 Wis. 2d 421, 426–27, 225 N.W.2d 428 (1975). Since we have upheld the dismissal of the safe-place violation claim, we also uphold the dismissal of the negligence claim.

*By the Court.*—Judgment affirmed.

¶ 26 CANE, C.J. (*dissenting*). I respectfully dissent from the majority opinion for four reasons: first, whether constructive notice of an unsafe condition may

be charged to the arena is a fact question for the jury; second, the majority opinion rewrites the *Strack*[1] exception; third, the majority opinion is improperly driven by policy considerations; and, finally, our standard of review requires reversal of summary judgment.

¶ 27. Generally, to establish liability for an alleged safe-place violation, a plaintiff must prove three elements: (1) the existence of a hazardous condition; (2) that such condition caused the injury; and (3) that the building owner had actual or constructive notice of the condition.[2] *See Fitzgerald v. Badger State Mut. Cas. Co.*, 67 Wis. 2d 321, 326, 227 N.W.2d 444 (1975). Regarding the third element, "the general rule is that constructive notice is chargeable only where the hazard has existed for a sufficient length of time to allow the vigilant owner or employer the opportunity to discover and remedy the situation." *May v. Skelley Oil Co.*, 83 Wis. 2d 30, 36, 264 N.W.2d 574 (1978). However, "where there is a reasonable probability that an unsafe condition will occur because of the nature of the business and the manner in which it is conducted, then constructive knowledge of the existence of such an unsafe condition may be charged to the operator of the premises." *Strack v. Great Atl. & Pac. Tea Co.*, 35 Wis. 2d 51, 57–58, 150 N.W.2d 361 (1967). Such constructive notice does not depend upon proof of an extended period of time within which the operator might have received actual knowl-

---

[1] *Strack v. Great Atl. & Pac. Tea Co.*, 35 Wis. 2d 51, 150 N.W.2d 361 (1967).

[2] The majority opinion appears to add a fourth element: that the plaintiff present "a principled and reasonable" explanation of what the defendant should have done to prevent the plaintiff's injuries from occurring. *See* majority opinion, *supra* ¶ 22. I disagree with placing this additional burden on the plaintiff.

813

edge of the unsafe condition. *Id. Strack* is the exception to the general rule that constructive notice is chargeable "only where the hazard has existed for a sufficient length of time to allow the vigilant owner or employer the opportunity to discover and remedy the situation." *May*, 83 Wis. 2d at 36. Put differently, *Strack* is another way of proving constructive notice.

¶ 28. Thus, the jury may conclude the operator has constructive knowledge of an unsafe condition where there is a reasonable probability that an unsafe condition will occur (1) in an area under the exclusive control of the owner or operator of the premises, because of (2) the nature of the business, and (3) its method of operations. *Strack*, 35 Wis. 2d at 57–58; *Kaufman v. State St. Ltd. P'ship*, 187 Wis. 2d 54, 64, 522 N.W.2d 249 (Ct. App. 1994) (adding the exclusive control element).

## QUESTION OF LAW OR FACT

¶ 29. First, whether the arena had constructive notice of an unsafe condition under the conditions set forth in *Strack* and *Kaufman* is a fact question for the jury. While it is true that situations involving undisputed facts generally present questions of law appellate courts review de novo, *State v. Williams*, 104 Wis. 2d 15, 21–22, 310 N.W.2d 601 (1981), the supreme court nevertheless has held the question of whether actual or constructive notice exists presents a jury question not to be decided by appellate courts as a matter of law.[3]

---

[3] As the Wisconsin supreme court noted, "[w]hether to label an issue a 'question of law,' a 'question of fact,' or a 'mixed question of law and fact' often is more a matter of allocation than analysis." *State v. Byrge*, 2000 WI 101, ¶ 39, 237 Wis. 2d 197, 614 N.W.2d 477. It is "an allocation in which [it is]

*Werner v. Gimbel Bros.*, 8 Wis. 2d 491, 493, 99 N.W.2d 708 (1959); *see Rosenthal v. Farmers Store Co.*, 10 Wis. 2d 224, 227–28, 102 N.W.2d 222 (1960); *see also Gerdmann v. United States Fire Ins. Co.*, 119 Wis. 2d 367, 370, 372, 350 N.W.2d 730 (Ct. App. 1984) (holding where a party cannot conclusively establish the owner had constructive notice of an unsafe condition, the notice question was properly submitted to the jury). Indeed, *Strack*, the very case that carved out the exception from the general rule of constructive notice, itself was an appeal from a jury verdict. There, the supreme court upheld a jury's finding of constructive notice where there was no evidence that a prune was on the floor of the grocery store longer than five minutes. *Strack*, 35 Wis. 2d at 56. Therefore, the jury is the proper voice to answer the question of whether the arena had constructive notice of an unsafe condition.[4]

recognize[d] [that] one judicial actor is better positioned than another to decide a matter." *Id.* With regards to questions of notice, including questions of constructive notice (which by definition includes whether *Strack* applies), the supreme court has relegated the issue to the jury presumably on the theory that it is in a better position to decide the matter. Thus, the majority's reliance on Clarence Morris, *Law and Fact,* 55 HARV. L. REV. 1303 (1942), is misplaced.

[4] This conclusion is further supported, albeit in a broader sense, by an analogy to negligence cases. The safe-place statute does not create an independent cause of action. *Krause v. VFW Post No. 6498*, 9 Wis. 2d 547, 552, 101 N.W.2d 645 (1960). Rather, it "lays down a standard of care and if those to whom it applies violate the provisions thereof they are negligent." *Id.* A safe-place violation, then, is essentially a negligence claim, with the difference being that the safe-place statute imposes on owners or operators of premises a higher standard of care.

¶ 30. The majority cites *Kaufman* and *Low v. Siewert*, 54 Wis. 2d 251, 195 N.W.2d 451 (1972), as support for its conclusion that the issue of whether the *Strack* exception applies presents a question of law. In *Kaufman*, we upheld summary judgment in favor of a grocery store where the plaintiff slipped and fell on a banana peel in the store's parking lot. The court refused to expand the *Strack* exception to a parking lot because it was an area beyond the doors of the premises and outside the exclusive control of the grocery store. *Kaufman*, 187 Wis. 2d at 64. Similarly, in *Low* the supreme court upheld a directed verdict in favor of an owner of premises where the plaintiff fell in a darkened parking lot as a result of a light bulb being either burned out or turned off. There, the court distinguished *Strack* on its facts and held it did not apply because the plaintiff

*Dykstra v. Arthur G. McKee & Co.*, 92 Wis. 2d 17, 26, 284 N.W.2d 692 (Ct. App. 1979); *see also* Wɪꜱ JI-Cɪᴠɪʟ 1005 (1999) and 1900.4 (2002).

Regarding negligence claims, as a general rule, "the existence of negligence is a question of fact which is to be decided by the jury." *Ceplina v. South Milw. Sch. Bd.*, 73 Wis. 2d 338, 342, 243 N.W.2d 183 (1976). This principle also holds true where the facts of the case are undisputed. In *Ceplina*, the supreme court held where the facts of a case are not seriously contested, the question of whether negligence exists embraces a question of *ultimate fact* to be decided by the jury. *Id.* at 344; *see also Ennis v. M.A. Hanna Dock Co.*, 148 Wis. 655, 658, 134 N.W. 1051 (1912) (where facts were undisputed, no need for expert opinion evidence because whether conduct was negligence was ultimate fact to be determined by the jury). This rule makes sense because it acknowledges that a reasonable jury could draw competing inferences of ultimate fact from undisputed facts. *See Douglas v. Chicago, M. & St. P. Ry. Co.*, 100 Wis. 405, 407, 76 N.W. 356 (1898). Negligence, then, turns into a question of law only "where the facts are undisputed and the inferences therefrom [are] all one way." *Id.*

could not prove the nature of the business or the manner in which it was conducted created a reasonable probability that a burned out light bulb would occur in a parking lot. *Low*, 54 Wis. 2d at 254–55.

¶ 31. However, it does not follow that the application of *Strack* always presents a question of law simply because these cases decided *Strack* did not apply as a matter of law. It seems to me *Low* and *Kaufman* are more properly characterized as standing for the limited implication that there are circumstances when the exception to the general rule of constructive notice will not apply as a matter of law; namely, where no jury acting reasonably could find the owner had constructive notice of an unsafe condition, it is proper for a court, as a matter of law, to intervene and conclude the owner was not negligent. *See Alvarado v. Sersch*, 2003 WI 55, ¶ 29, 262 Wis. 2d 74, 662 N.W.2d 350 (summary judgment in negligence is proper where no reasonable jury, properly instructed, could find defendant was negligent).

¶ 32. If a plaintiff fails to show the essential elements of a cause of action, summary judgment, in part or in whole, or directed verdict against him or her is proper. *See Quality Lumber & Coal Co. v. Kemp*, 46 Wis. 2d 621, 624, 176 N.W.2d 401 (1970). This, it appears, was precisely the situation presented in *Kaufman* and *Low*. Again, *Kaufman* involved an injury that occurred in an area outside the exclusive control of the owner, and, in *Low*, the plaintiff could not establish a connection between the nature of the owner's business or its method of operation with a burned out light bulb in a parking lot. Thus, in those circumstances it was proper to conclude, as a matter of law, the *Strack* exception was inapplicable. Because the plaintiff in each case could not establish all the elements of *Strack*,

there would have been no use in submitting the question of negligence to the jury.

¶ 33. As such, whether the arena may be charged with constructive notice of an unsafe condition as set forth in *Strack* and *Kaufman* is a question of fact for the jury, unless, of course, no jury acting reasonably could find constructive notice. The plaintiff must produce some facts from which a jury acting reasonably could conclude the arena should be charged with constructive notice via *Strack* in order to survive summary judgment or a directed verdict. This means, in practice, the plaintiff has to provide some facts that tend to prove a jury acting reasonably could find a reasonable probability an unsafe condition will occur, (1) because of the nature of the business (2) and its method of operations, (3) in an area under the exclusive control of the owner or operator of the premises. *Strack*, 35 Wis. 2d at 57–58; *Kaufman*, 187 Wis. 2d at 64. Then, it is up to the jury, as the arbiter of ultimate facts, to determine whether to charge the owner or operator with constructive notice of the unsafe condition.

¶ 34. Applying this analysis and viewing the facts most favorably to Megal, a reasonable jury could conclude the arena should be charged with constructive notice of an unsafe condition based on the *Strack* exception. First, it cannot seriously be refuted that the nature of the arena's business in part was to sell food. Second, the arena's method of operation was as follows: patrons were allowed to take their food anywhere in the arena; the arena employed as few as two janitorial employees, with possibly only one working on the night of Megal's injury, to monitor the entire facility; there are no formal written procedures for inspection of the premises; and the employees do not conduct regular sweeps of the stairs or concourse areas to ensure they

are clear of spills or other unsafe conditions because they usually only clean up spills outside the concession area when someone reports them. Third, the injury occurred on the stairway inside the arena's premises. This is an area under the exclusive control of the owner or operator of the premises.

¶ 35. There are sufficient facts for all the elements. Thus, a jury acting reasonably could charge the arena with having constructive notice of an unsafe condition and it need not depend upon proof of an extended period of time within which the arena might have received knowledge of such an unsafe condition.

### SCOPE OF *STRACK* EXCEPTION

¶ 36. The second reason I dissent from the majority opinion is because it unwarrantedly limits the scope of the *Strack* exception. As I read the majority opinion, it has rewritten the *Strack* exception as follows: (1) the nature of the business must be merchandising or retail, or presumably some other similar venture, (2) its method of operation must be self-service or other similar mode of operation that allows carelessness of patrons, and (3) the location of the unsafe condition must be nearby the area where the dangerous condition is created. The first element does not appear to be determinative in that the opinion gives much more emphasis to the latter two elements. I disagree with this narrowing of *Strack* for two reasons.

¶ 37. Regarding the majority opinion's first two elements, their scope is broader than the majority suggests. Despite the fact that *Steinhorst v. H.C. Prange Co.*, 48 Wis. 2d 679, 180 N.W.2d 525 (1970), dealt with a self-serve merchandise counter in a retail store and *Strack* involved a self-serve merchandise

counter in a grocery store, the court in *Strack* announced the exception in terms of whether there is a reasonable probability an unsafe condition will occur "because of the nature of the business and the manner in which it is conducted." *Strack*, 35 Wis. 2d at 58. Similarly, *Steinhorst* phrases the exception in terms of "the manner of doing business" and the business's "method of operation." *Steinhorst*, 48 Wis. 2d at 684. If the exception was to be limited to self-service stands or particular types of businesses, such as grocery or retail stores, it is most reasonable to assume this would have been done in *Strack*, the very case that carved out the exception, or in *Steinhorst*, the case that most recently followed it. What is more, I would not place stock in the fact that the exception has not been applied to venues outside of self-service merchandising or retail or grocery stores. This fact does not lend credence to the conclusion it should not be applied to other venues.

¶ 38. With respect to the majority's third element, it does not appear to me that the location of the unsafe condition, inside of the premises, has any bearing on the application of the *Strack* exception. In *Kaufman*, we noted *Strack* "was influenced more by the 'nature' of the location and the certainty of everyday conduct inside a grocery store, than by the uncertainty of the length of time the prune might have been on the aisle floor." *Kaufman*, 187 Wis. 2d at 61. However, this notably does not state the unsafe condition must occur nearby the location in which the dangerous condition is created. Instead, it states in broad terms that the location of the unsafe condition must be "inside" the owner's premises. This reading of *Kaufman* is supported by the court's holding, namely that "[the plaintiffs] have provided no authority to establish the basis on which we could extend the *Strack* exception *beyond the doors of the*

*premises.* ... The parking lot in this case was not within the exclusive control of the defendants." *Kaufman*, 187 Wis. 2d at 64 (emphasis added). In light of this language, my view is that the unsafe condition need only occur inside the owner's premises or in an area under the exclusive control of the owner.

## PUBLIC POLICY CONSIDERATIONS

¶ 39. The third reason I cannot join the majority opinion is because its holding appears to be primarily driven by public policy considerations. The policy considerations include, (1) applying *Strack* to this case would result in the exception swallowing the general rule of proving constructive notice because the arena could not possibly have patrolled the entire facility to be on guard for something such as a spilled french fry, and (2) the impact of this case would implicate all arenas, stadiums, theaters, restaurants, and shopping malls. With these policy considerations in the balance, the majority limits the imposition of liability for large-scale entertainment venues such as the arena. I cannot agree.

¶ 40. The supreme court held that courts cannot preclude liability on public policy grounds before a full factual resolution of the matter has occurred at trial. *Alvarado*, 262 Wis. 2d 74, ¶¶ 18–21. A full factual resolution of the matter, also called "a sufficient factual basis," seems to include "[f]indings as to actual negligence, damages and the causal relationship between them." *Id.*, ¶ 25. These "facts" are not only material and helpful, but also are necessary in order to facilitate a "fair and complete evaluation of the policy consider-

ations."[5] *Id.*, ¶ 23. The only time a court may review public policy considerations to preclude liability before trial are "those cases where the facts are simple to ascertain and the public policy questions have been fully presented." *Id.*, ¶ 18.

¶ 41. Applying *Alvarado*, the majority's appeal to policy considerations at this stage in the litigation is premature. Nevertheless, I will address the policy implications raised by the majority opinion and raise one of my own.

¶ 42. While, again, in my view we should not apply *Strack* to the case here but rather should allow the jury to resolve the issue, there is no basis upon which to conclude that the application of *Strack* here would swallow the general constructive notice rule. The majority seems to say that plaintiffs would never resort to proving constructive notice under the general rule – that is, by length of time evidence – but would rather automatically default to the *Strack* exception.

¶ 43. The flaw in this prediction is that it presumes the *Strack* exception is always an easy standard to prove. I do not agree with this assessment. Under *Strack*, not only does a plaintiff have to prove that an

---

[5] The public policy considerations that may preclude a party's liability are:

(1) the injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect it appears too highly extraordinary that the negligence should have resulted in the harm; (4) allowing recovery would place too unreasonable a burden on the tortfeasor; (5) allowing recovery would be too likely to open the way for fraudulent claims; [or] (6) allowing recovery would enter a field that has no sensible or just stopping point.

*Alvarado v. Sersch*, 2003 WI 55, ¶ 17, 262 Wis. 2d 74, 662 N.W.2d 350.

unsafe condition occurred in an area under the exclusive control of the owner of a premises, the plaintiff also has to persuade the jury that this is attributable to the nature of the business with a method of operation such that it can be said to a reasonable probability the unsafe condition would occur.[6]

¶ 44. It may not be difficult to prove this with the facts Megal presents, mostly because the arena only had at most two employees working a 61,000 square foot arena who did little more than wait for someone to become sufficiently upset about a spill to actually leave the ice-show performance to lodge a complaint. The same seems to be true in *Strack* and *Steinhorst*. In *Strack*, one of the reasons the court upheld the jury's finding of constructive notice was that it was the grocery store's policy to check the floors every ten minutes and to sweep at least once an hour, yet no one knew when the floor was last inspected or swept. *Strack*, 35 Wis. 2d at 56. Similarly in *Steinhorst*, the court noted "[t]here is no evidence the aisle was checked for safety, although this type of self-serve operation should call for periodic inspection." *Steinhorst*, 48 Wis. 2d at 684.

¶ 45. Although there may be situations in which *Strack* could be easily applied, owners and operators of premises could insulate themselves from being subject to *Strack* by simply adopting and implementing a method of operation geared to reasonably ensuring the safety of the frequenters. The lesson learned from

---

[6] As stated in *Kaufman*, "*Strack* clearly does *not* stand for the proposition that constructive notice *automatically* exists when the condition is present for no appreciable time, or when there is no evidence to remove the temporal estimate from the realm of pure speculation." *Kaufman v. State St. Ltd. P'ship*, 187 Wis. 2d 54, 63, 522 N.W.2d 249 (Ct. App. 1994).

*Strack* and *Steinhorst* is that when owners of businesses do little, or nothing at all, to ensure their premises are safe from debris or other temporary defects, their method of operation may create a reasonable probability the unsafe condition will occur. Owners and operators of premises could avoid being subject to *Strack*, then, by establishing reasonable policies for inspection and clean-up, training employees according to this policy, documenting what is done and when it is done, and, most importantly, following through on the monitoring and clean-up policy. They must do something, anything really, to show their method of operation somehow defeats the plaintiff's assertion they should have known of the defect.

¶ 46. Of course the majority is correct that "the arena could not possibly have patrolled the entire facility to be on guard for something such as a spilled french fry." Nothing in the law requires it to be held to such a standard. All that owners and operators of premises are required to do is ensure their premises are "as safe as the nature of the premises reasonably permits." *Strack*, 35 Wis. 2d at 54. This includes, at least in *Strack* situations, implementing a method of operation geared towards reasonably ensuring the safety of the frequenters.[7]

¶ 47. For these reasons, the majority's second policy argument that all arenas, stadiums, theaters, restaurants, and shopping malls may be subject to the

---

[7] For this reason, the upshot of my view will never be to force venues that sell concessions such as this to herd their patrons into a confined area to consume their purchases. Instead, businesses will simply have to implement, and follow, clean-up procedures that are designed to reasonably ensure the premises are as safe as their nature reasonably permits. *Strack*, 35 Wis. 2d at 54.

*Strack* exception is specious. These all sell concessions, and they should anticipate spills; yet, they need only adopt a method of operation that provides for reasonable clean-up in a reasonable amount of time. In a broader sense, so long as the venues ensure their premises are "as safe as the nature of the premises reasonably permits," *Strack*, 35 Wis. 2d at 54, they will not be subject to additional liabilities.

¶ 48. The majority opinion, though, followed to its logical conclusion implicates a terrific public policy problem, and that is that the majority has effectively granted immunity to large-scale entertainment venues from lawsuits arising out of slip-and-falls on temporary or transitory unsafe conditions that occur on their premises. These businesses now have no incentive to monitor their premises to ensure they are reasonably free of debris or other unsafe conditions. Indeed, the opposite is true.

### STANDARD OF REVIEW

¶ 49. The final reason I dissent from the majority opinion is because it gives no deference to the standard of review. Summary judgment is a drastic remedy that is to be granted only when the movant is clearly entitled to judgment as a matter of law. *Village of Fontana-On-Geneva Lake v. Hoag*, 57 Wis. 2d 209, 214, 203 N.W.2d 680 (1973); *McDonald v. Century 21 Real Estate Corp.*, 111 Wis. 2d 600, 602–03, 331 N.W.2d 606 (Ct. App. 1983). We uphold summary judgment only where reasonable alternative inferences of ultimate facts cannot be drawn from the undisputed facts. *See Ritt v. Dental Care Assocs.*, 199 Wis. 2d 48, 64, 543 N.W.2d 852 (Ct. App. 1995); *Dottai v. Altenbach*, 19 Wis. 2d 373, 375, 120 N.W.2d 41 (1963). Stated differently, "[w]e will reverse a

summary judgment if a review of the record reveals . . . there are undisputed material facts from which reasonable alternative inferences may be drawn." *Hofflander v. St. Catherine's Hosp., Inc.*, 2003 WI 77, ¶ 26, 262 Wis. 2d 539, 664 N.W.2d 545.

¶ 50. Whether the undisputed facts of the case at bar warrant the imposition of constructive notice to the arena is an extremely close question. From the facts adduced thus far, reasonable alternative inferences may be drawn from them to resolve this question. Viewing the facts in the light most favorable to the plaintiff, I cannot agree the arena is clearly entitled to judgment as a matter of law. *See Kraemer Bros. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 567, 278 N.W.2d 857 (1979).