DUGAN, J.
¶1 Woodman's Food Market appeals an order denying its motions after verdict and entering judgment based on a jury's verdict finding that it was liable for injuries sustained by Jose Correa when he slipped and fell inside of one of its stores.[1]
¶2 Woodman's argues that the evidence of constructive notice of a hazard was entirely speculative and, therefore, the trial court erred by denying its motion for a directed verdict, denying its motions after verdict, and denying its motion for summary judgment. For the following reasons, we conclude that the trial court erred in denying Woodman's motion for a directed verdict. Therefore, we reverse and remand this matter with directions.
BACKGROUND
¶3 On Wednesday, November 5, 2014, at about 10:10 a.m., Correa slipped on an unidentified substance and fell in the dairy aisle at the Woodman's in Oak Creek. He notified Woodman's employee, Steven Buckner, who cleaned up two spots within approximately twenty-three seconds and provided Correa with paper towel to wipe the substance off his shoe. Correa also reported the slip and fall to Woodman's.
¶4 In May 2016, Correa filed an action against Woodman's based on the slip and fall, alleging claims of negligence and violation of the safe place statute.[2] Woodman's filed a motion for summary judgment, arguing that Correa could not prove an essential element of both the negligence and violation of the safe place statute claims because he did not have any evidence to show that Woodman's had notice that there was a hazardous substance on the floor before he fell. After the motion was fully briefed, the trial court denied the motion, holding that there were genuine issues of material fact for the jury to resolve.
¶5 The trial court subsequently presided over a three-day jury trial in March 2018. The jury heard testimony from Correa and two Woodman's employees, Buckner and Steven Haze. In addition, the jurors watched an approximately ten-minute security video of the dairy aisle prior to, during, and after Correa's fall.
¶6 At trial, Correa did not dispute that Woodman's followed its policies and procedures. He acknowledged that each night Woodman's had a third-party cleaning service scrub the floors and that the floors were cleaned by 8:00 a.m. or 8:30 a.m. on November 5, 2014. He agreed that Buckner did what he was supposed to do when Correa notified him of the fall.
¶7 Correa testified that he did not see the substance before he slipped and fell on it. After falling, Correa got up, took about ten steps, and waved Buckner over. Correa also testified that, when standing about ten steps away from where he had fallen, he could not see anything on the floor.
¶8 Buckner cleaned up the area and provided Correa with paper towel to wipe off his shoe. Correa did not touch the substance with his hands. However, when he wiped his shoe with the paper towel he could tell that the substance was sticky, and the bottom of his shoe continued to feel sticky even after he had wiped it off. Correa never identified the substance. He had no information to indicate the source of the substance or how long it was on the floor. Correa also had no information indicating that anyone else had any problems walking through that area of the store before his accident occurred. When asked whether the floor "affected by the substance" could have been as small as an inch, Correa responded that he could not say one way or the other because he did not see anything.
¶9 Buckner worked as a stock clerk in the dairy department and his job duties included looking out for spills and cleaning them up. The dairy area can be one of the busiest areas in the store and there are multiple spills in the area each day. Buckner testified that on November 5, 2014, he began working at 8:00 a.m. Within the ten minutes before Correa fell, Buckner had passed through the dairy area twice. Buckner testified that Correa flagged him down and, as he walked to clean up the floor, he could see the two spots on the floor. However, at trial, Buckner could not recall the size of the spots and watching the video did not provide him with any frame of reference for their size. Buckner further testified that if he had seen the two spots when he was passing by the dairy area before Correa fell, he would have stopped whatever he was doing to clean them up.
¶10 Haze, who was an assistant store manager, testified that on November 5, 2014, Correa informed him that he had slipped and fallen in the dairy aisle. Haze completed a customer incident report. To try to determine what happened, Haze viewed the store security video showing the dairy aisle, but he could not figure out what happened. He then reviewed the video a second time with a coworker. They watched the video footage beginning approximately ninety minutes before Correa fell and they did not see anything relevant to the fall. Haze saved the last ten minutes of the video, which was shown to the jury.
¶11 At the close of Correa's case-in-chief, Woodman's moved for a directed verdict, supported by a written memorandum. Woodman's argued that Correa had not presented any evidence to show when the substance got on the floor. The trial court denied the motion. After the trial court denied its motion for a directed verdict, Woodman's rested. Correa also rested.
¶12 The jury returned a verdict against Woodman's, finding that its negligence was the sole cause of Correa's accident. The jury awarded Correa damages in the amount of $168,996.27.
¶13 Woodman's filed motions seeking (1) reconsideration of the motion for a directed verdict, (2) a decision changing the jury's answers to two special verdict questions and the entry of judgment consistent with the changed answers, and (3) a new trial. At a hearing on the motions, the trial court heard arguments and denied the motions in an oral decision. The trial court subsequently entered a written order denying the motions after verdict and ordering the entry of judgment on the jury's verdict.
¶14 This appeal followed.
DISCUSSION
¶15 Woodman's argues that because the evidence that Woodman's had constructive notice of a hazard was entirely speculative, the trial court erred when it denied Woodman's motion for a directed verdict, its motions after verdict, and its motion for summary judgment. The central issue on appeal is whether Correa presented sufficient evidence to show that Woodman's had constructive notice of a hazard before he fell. As we explain, we agree with Woodman's argument that Correa failed to present sufficient evidence to show that Woodman's had constructive notice of a hazard before he fell.
I. Standard of review and applicable law
¶16 In reviewing a trial court's denial of a motion for directed verdict, we determine whether, "considering all credible evidence and reasonable inferences from that evidence in the light most favorable to the party against whom the motion was made, there is any credible evidence to sustain a finding in favor of that party." See Warren v. American Family Mut. Ins. Co. , 122 Wis. 2d 381, 384, 361 N.W.2d 724 (Ct. App. 1984). "[A] verdict should be directed only where there is no conflicting evidence as to any material issue and the evidence permits only one reasonable inference or conclusion." Millonig v. Bakken , 112 Wis. 2d 445, 451, 334 N.W.2d 80 (1983). We will not reverse the trial court's determination unless it is "clearly wrong." See Foseid v. State Bank of Cross Plains , 197 Wis. 2d 772, 784, 541 N.W.2d 203 (Ct. App. 1995).
¶17 The safe place statute, WIS. STAT. § 101.11(1) (2017-18),[3] " 'requires a place of employment to be kept as safe as the nature of the premises reasonably permits.' " Kaufman v. State St. Ltd. P'ship , 187 Wis. 2d 54, 59, 522 N.W.2d 249 (Ct. App. 1994) (citation omitted). To be liable for a failure to correct a defect, the owner must have actual or constructive knowledge of the defect. See id. Similarly, "to be liable for negligence, [the defendant] must have actual or constructive notice of the condition which caused the plaintiff's fall." Wallow v. Zypan , 35 Wis. 2d 195, 200, 150 N.W.2d 329 (1967).
¶18 Generally, an "owner is deemed to have constructive notice of a defect or unsafe condition when that defect or condition has existed a long enough time for a reasonably vigilant owner to discover and repair it." Megal v. Green Bay Area Visitor & Convention Bureau, Inc. , 2004 WI 98, ¶12, 274 Wis. 2d 162, 682 N.W.2d 857. "The length of time viewed as sufficient varies according to the nature of the business, the nature of the defect, and the public policy involved." See Rosario v. Acuity & Oliver Adjustment Co. , 2007 WI App 194, ¶12, 304 Wis. 2d 713, 738 N.W.2d 608 (quoting May v. Skelley Oil Co. , 83 Wis. 2d 30, 36-37, 264 N.W.2d 574 (1978) ).
II. Because there was no length of time evidence, the trial court erred when it denied Woodman's motion for a directed verdict
¶19 Woodman's argues that the evidence that it had constructive notice of a hazard was entirely speculative and that, consequently, the trial court erred in denying its motion for a directed verdict. Correa argues that the jury had sufficient evidence to draw the inference that the hazard existed for more than ninety minutes and, therefore, to find that Woodman's had constructive notice of the substance on the floor.
¶20 The general rule for constructive knowledge is based on a temporal analysis-how long the danger was present and was it there long enough for a vigilant owner to discover and remove it. See Kaufman , 187 Wis. 2d at 59.[4] Constructive notice " 'is chargeable only where the hazard has existed for a sufficient length of time to allow the vigilant owner or employer the opportunity to discover and remedy the situation.' " Id. (citation omitted). Furthermore, "constructive notice cannot be found when there is no evidence as to the length of time the condition existed." Id. In considering whether the evidence of constructive notice was sufficient to go to the jury, we consider all credible evidence and reasonable inferences from that evidence in the light most favorable to Correa. See Warren , 122 Wis. 2d at 384.
¶21 In arguing the constructive notice issue, Woodman's cites Kochanski v. Speedway SuperAmerica, LLC , 2014 WI 72, ¶36, 356 Wis. 2d 1, 850 N.W.2d 160, and Kaufman , 187 Wis. 2d at 64. Both cases analyze the issue of whether there was constructive notice in circumstances similar to those of this case, and we find their analysis of the issue instructive here.
¶22 Kochanski addressed an issue of whether the owner of a convenience store had constructive notice of a hazard. See id. , 356 Wis. 2d 1, ¶¶36, 45. The plaintiff in that case filed a negligence and safe place statute action after he slipped and fell on a curb outside a Speedway convenience store on a February morning, following a light accumulation of snow on the walkway where he fell. Id. , ¶39. At trial, Speedway presented surveillance video footage showing the fall. Id. , ¶4. The jury returned a verdict for the plaintiff, and the trial court entered judgment on the verdict. Id. , ¶8. This court reversed the judgment and remanded the case for a new trial. Id. , ¶1. The supreme court affirmed our decision. Id. , ¶2.
¶23 Our supreme court held that the evidence was insufficient to establish constructive notice for the following reasons: (1) the video footage showing a light accumulation of snow did not establish that a dangerous condition existed when the accident occurred; (2) Kochanski offered no evidence to show how long the alleged unsafe condition existed; and (3) Kochanski presented no evidence that Speedway's safety polices and procedures were inadequate or not followed. Id. , ¶44, 45, 47. The court also held that Kochanski's testimony that an employee applied salt to the walkway after Kochanski's fall did not establish the length of the time that the alleged unsafe snow existed before his fall. Id. , ¶45. The court stated that Kochanski had not met his burden of making a showing sufficient to establish all the essential elements of a safe place claim because he had not shown actual notice or the length of time the defect existed, or that Speedway's methods and processes for handling unsafe conditions were not followed. See id. , ¶¶39, 45. The court reasoned, "Speculation as to how long the unsafe condition existed ... [is] insufficient to establish constructive notice." Id.
¶24 Kaufman addressed an issue of whether the owner of a parking lot and two tenant stores had constructive notice of a hazard. See id. , 187 Wis. 2d at 56-57, 6-63, 65. The plaintiff in that case filed a negligence and safe place statute action after she slipped and fell on a piece of a banana in the parking lot. See id. This court concluded that the trial court properly granted summary judgment because the plaintiff offered no evidence as to the length of time the condition existed and, therefore, failed to establish constructive notice. Id. at 65. The court held that there was no evidence as to how long the banana was in the parking lot and "any conclusion in that regard would be purely speculative." Id. at 63.
¶25 When we consider the evidence on which Correa relies as supporting a reasonable inference that Woodman's had constructive notice of a dangerous condition, we are presented with a situation similar to those presented in Kochanski and Kaufman where the plaintiffs were unable to establish constructive notice. Correa cites the following evidence as supporting a reasonable inference that Woodman's had constructive notice of a dangerous condition: (1) the fact that he fell; (2) the fact that there was "a foreign dairy substance" on the floor when he fell; (3) the video shown to the jury did not show the substance being deposited on the floor in the ten minutes before he fell; (4) Haze's testimony that the video did not show the substance being deposited on the floor in the ninety minutes before he fell; (5) the ten-minute video showed a customer in a red jacket looking at the area where Correa eventually fell; and (6) the fact that Buckner had no difficulty locating the substance on the floor after Correa fell.
¶26 The first, second, and sixth pieces of evidence cited by Correa were present in both Kochanski and Kaufman and, as in those cases, are insufficient to establish constructive notice; that is, (1) each plaintiff fell (2) on a hazard and (3) after the fall the hazard was located. Despite construing the evidence in the light most favorable to Correa, this type of evidence does not contribute to constructive notice because neither the evidence, nor the reasonable inferences drawn from that evidence provide any indication of how long the hazard existed on Woodman's floor.
¶27 With respect to the third piece of evidence that Correa cites, he concedes, "[t]he video, roughly ten minutes in length, is not of sufficient quality to show the substance itself on the ground." This concession defeats Correa's argument that the ten-minute video that the jury viewed supports a reasonable inference that the substance was present for longer than ten minutes. Furthermore, as to the fourth piece of evidence, Haze's testimony established that the ninety minutes of video did not show any substance being deposited on the floor. We emphasize that "[s]peculation as to how long the unsafe condition existed ... [is] insufficient to establish constructive notice." See Kochanski , 356 Wis. 2d 1, ¶36. As noted, the ten-minute video shows when and where Correa slipped. However, it does not provide any evidence as to how long the hazard existed. The distance and the perspective of the video do not provide any evidence that could lead to any reasonable inferences that Woodman's was put on notice of the hazardous condition. Therefore, the ten-minute video does not establish constructive notice.
¶28 Further, the video calls for speculation because the substance is not visible on the floor in the video. The video shows that other customers walked over the area a total of twenty-eight times in the ten minutes immediately before Correa slipped. None of the customers on that video appear to have noticed anything on the floor or to have had any difficulty navigating the area prior to Correa's slip and fall. Furthermore, with respect to Correa's fifth piece of evidence, the video shows that the customer in the red jacket is not looking at the floor. Instead, he appears to be looking around the general area of the products on the shelf. Also, Buckner was in the area twice during those ten minutes and nothing called his attention to the area, despite the fact that he was trained to watch for and clean up spills. Thus, the direct and circumstantial evidence, and reasonable inferences from that evidence, are insufficient to provide any basis for the jury to conclude that Woodman's had constructive notice of the hazard prior to Correa's fall.
¶29 We also note that, contrary to Correa's statement that the substance was a foreign dairy substance (the second piece of evidence), no witnesses knew what the substance was or where it came from. Neither Correa nor Buckner-the only two people who had contact with the substance-could identify the substance, explain its origin, or state how long prior to the fall it appeared.
¶30 Further, there is no evidence from any witnesses or the video to establish that, prior to the fall , the substance was visible at all, let alone that it was visible from where Buckner crossed the dairy aisle before the accident occurred. Buckner testified that he saw the substance on the floor after Correa flagged him down and pointed out where he fell. By contrast, Correa testified that he did not see the substance before or after he fell, despite pointing out the substance to Buckner. In sum, there was no testimony or evidence to indicate where the substance came from, how long the substance was on the floor, or when the substance may have reached the floor.
¶31 Despite considering the six pieces of evidence in the light most favorable to Correa, such evidence does not provide a basis for any reasonable inference as to how long, prior to Correa's fall, the substance was on the floor. The jury could only guess as to how long the substance was on the floor. Any such inference would be to engage in speculation. See Kaufman , 187 Wis. 2d at 62. Taken together, the evidence presented at trial did not satisfy Correa's burden of presenting evidence that showed how long the hazard existed before Correa fell. Thus, Correa failed to establish that Woodman's had constructive notice of the hazard.
¶32 We conclude that the trial court clearly erred in denying Woodman's motion for a directed verdict at the close of Correa's case because the evidence did not establish the required element of constructive notice. The lack of evidence regarding Woodman's constructive notice of the hazard was "so clear and convincing as to reasonably permit unbiased and impartial minds to come to but one conclusion"-Correa failed to met his burden of proof that Woodman's had constructive notice of the hazard prior to his fall. See Voith v. Buser , 83 Wis. 2d 540, 550, 266 N.W.2d 304 (1978). Therefore, we reverse and remand this matter.[5] Upon remand, the trial court shall vacate the judgment, grant Woodman's motion for directed verdict, and enter judgment for Woodman's dismissing the complaint.
CONCLUSION
¶33 For the foregoing reasons, we conclude that the trial court erred when it denied Woodman's motion for a directed verdict.
By the Court. -Order reversed and cause remanded with directions.
Not recommended for publication in the official reports.

We note that Correa did not completely fall to the floor; Correa's legs slipped toward the left and he extended his right arm and put his right hand on the floor, which had the effect of interrupting the fall.

Although Correa alleged both negligence and safe place violation claims against Woodman's and the jury was instructed on those claims, the special verdict only asked if Woodman's "was negligent in failing to maintain the premises as safe as the nature of the business would reasonably permit?"-the safe place violation standard. See Kochanski v. Speedway SuperAmerica, LLC , 2014 WI 72, ¶31, 356 Wis. 2d 1, 850 N.W.2d 160. Moreover, on appeal, Correa does not refute Woodman's argument that he failed to introduce sufficient evidence to support an independent claim of common law negligence. He only argues that actual or constructive notice is required for a jury to find a safe place violation and that he introduced sufficient evidence for the jury to find that Woodman's had constructive notice that the hazardous substance was on the floor. Thus, Correa has abandoned any issue relating to the common law negligence claim. See A.O. Smith Corp. v. Allstate Ins. Cos. , 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Correa does not rely on actual notice or the Strack exception to the general rule of constructive notice. See Strack v. Great Atl. & Pac. Tea Co. , 35 Wis. 2d 51, 57-58, 150 N.W.2d 361 (1967) (holding that "where there is a reasonable probability that an unsafe condition will occur because of the nature of the business and the manner that it is conducted, then constructive knowledge" that such a condition exists may be "charged to the operator." Under such circumstances "constructive notice does not depend on proof of an extended period of time within which the operator might have received knowledge of the condition.")
Correa also does not challenge the quality of or compliance with Woodman's safety policies and procedures in this case. See Megal v. Green Bay Area Visitor & Convention Bureau, Inc. , 2004 WI 98, ¶20, 274 Wis. 2d 162, 682 N.W.2d 857 (noting in part that the plaintiff failed to present sufficient evidence that the defendant had constructive notice of a french fry on which plaintiff slipped because the plaintiff provided no "testimony about the usual management and maintenance of a 61,000 square-foot public building" or what is "reasonable to expect for the management of such a facility"). Therefore, we confine our analysis to the general rule of constructive notice under the safe place statute.

Based on our conclusion, we need not address the other issues raised by Woodman's. See State v. Blalock , 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (stating that as an appellate court, we decide cases on the narrowest possible grounds).