COURT OF APPEALS
DECISION
DATED AND FILED

September 26, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2221**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV232

IN COURT OF APPEALS
DISTRICT IV

---

BRIAN STUBITSCH, LINDSAY STUBITSCH AND OLIVIA STUBITSCH,

PLAINTIFFS-APPELLANTS,

EDGERTON HOSPITAL AND HEALTH SERVICES,

INVOLUNTARY-PLAINTIFF-RESPONDENT,

V.

BRIAN M. REEDER, MD AND DEAN HEALTH SYSTEMS, INC.,

DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Dane County: DIANE SCHLIPPER, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Brian Stubitsch and Lindsay Stubitsch, and their daughter Olivia Stubitsch, appeal a circuit court order granting the motion by Dr. Brian Reeder and Dean Health Systems, Inc. for summary judgment dismissing the Stubitsches' medical negligence claims against them.[1]  The Stubitsches' claims arise out of medical treatment Olivia received for a broken knee (referred to by the parties as a "patella avulsion fracture") in 2017, when she was seven years old.  The Stubitsches allege that Reeder negligently prescribed an adult-sized knee brace for Olivia and negligently instructed Brian and Lindsay to tighten the brace, and that this tightening caused nerve damage (referred to by the parties as a "peroneal nerve injury").  The Stubitsches retained Dr. Charles Klein as an expert witness to support their allegations that Reeder was negligent and that this negligence caused Olivia's peroneal nerve injury.  The circuit court granted Reeder's motion for summary judgment dismissing the Stubitsches' claims on the ground that the Stubitsches failed to rebut Reeder's prima facie case that Klein's opinion that Reeder caused Olivia's peroneal nerve injury is unreliable and, therefore, his testimony is inadmissible under WIS. STAT. § 907.02(1) (2021-22).[2]

¶2     The Stubitsches argue that Reeder is not entitled to summary judgment dismissing their claims for two reasons.  First, they argue that the circuit

---

[1] We refer to each of the Stubitsches individually by his or her first name and to them collectively as the Stubitsches.

The Stubitsches also sued a number of healthcare entities for negligence.  All other parties except Dr. Brian Reeder and Dean Health Systems, Inc. have since been dismissed from the action.  We refer to the remaining defendants-respondents collectively as "Reeder."

[2] Under WIS. STAT. § 907.02(1), expert testimony is admissible if, among other things, the expert has applied the expert's experience and expertise "reliably to the facts of the case."

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

court erroneously exercised its discretion to exclude Klein's testimony as inadmissible under WIS. STAT. § 907.02(1) by erroneously concluding that his opinion is unreliable. Second, the Stubitsches argue that the court ruled on the issue of reliability as a basis for determining that Klein's testimony is inadmissible without providing adequate notice.

¶3     We conclude that the record establishes that Klein did not reliably apply his medical experience and expertise to the facts and, therefore, the circuit court properly exercised its discretion to exclude his testimony as inadmissible. We also conclude that the record establishes that the parties had adequate notice of and opportunity to brief and argue the issue of reliability. Because the Stubitsches failed to present expert testimony to create a dispute of material fact as to whether Reeder caused Olivia's peroneal nerve injury, we affirm the circuit court's order granting Reeder's motion for summary judgment dismissing the Stubitsches' claims.

## BACKGROUND

¶4     The following material facts are undisputed for the purposes of summary judgment.

¶5     In October 2017, Olivia, then seven years old, was seen at a Dean Health clinic for treatment of a patella fracture. In mid-October 2017, Olivia had her first appointment with Reeder, a board-certified pediatrician with an added qualification in sports medicine. As part of Olivia's treatment plan, Reeder recommended that Olivia wear an immobilizing knee brace for nine weeks, after which she would begin to wean out of the brace. On October 14, 2017, a nurse fitted Olivia with an immobilizing knee brace. Brian and Lindsay communicated their concerns that the brace was too big for Olivia to several Dean Health

providers, both in person and over the phone. Lindsay was told that the brace given to Olivia was the smallest brace they had available. In response to one of Lindsay's calls raising concerns about the brace sliding down Olivia's leg, Lindsay was told to tighten the brace strap just below Olivia's knee and loosen the two straps above Olivia's knee.[3]

¶6      Olivia saw a pediatrician for her patella fracture and other concerns on October 30, 2017, and the documentation from this appointment did not note any symptoms of a peroneal nerve injury.

¶7      Olivia also had two follow-up appointments with Reeder, on October 27 and November 27, 2017. During the October 27, 2017 visit, Lindsay repeated her concern about the brace fitting improperly and Reeder adjusted the brace. During the November 27, 2017 appointment, Reeder noted that Olivia was doing well with minimal pain and recommended that Olivia follow up as needed. Documentation from both appointments with Reeder noted no complaints or

---

[3] The parties dispute what reasonable inferences may be made based on the summary judgment materials about the level of Reeder's involvement in selecting and fitting the brace and in advising Lindsay to tighten the strap. Because the level of Reeder's involvement is of no consequence to the admissibility of Klein's testimony and the outcome of the summary judgment motion, it is not material and, therefore, we do not discuss it further. *See Michael R.B. v. State*, 175 Wis. 2d 713, 724, 499 N.W.2d 641 (1993) ("Material facts are those that are of consequence to the merits of the litigation."); *Baxter v. DNR*, 165 Wis. 2d 298, 312, 477 N.W.2d 648 (Ct. App. 1991) ("[T]he 'mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" (quoted source omitted)).

On a related note, Reeder moved for summary judgment on the alternative ground that Reeder did not supervise the fitting or tightening of the brace. Because we resolve this matter based on the unreliability of Klein's opinion, we do not address this alternative ground. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

4

observation of symptoms associated with a peroneal nerve injury. Olivia did not complain of any numbness or tingling in her legs while wearing the brace.

¶8    Olivia did not see Reeder after the November 27, 2017 appointment. Olivia stopped wearing the knee brace in late November or December 2017. Lindsay did not notice any gait issues when Olivia stopped wearing the brace, but noted that Olivia was "hesitant to, like, go running or, you know, to stop quickly," because she was concerned about "reinjuring her knee."

¶9    At some point between a few months after the 2017 fracture and the spring of 2019, Lindsay and Brian noticed that Olivia was having difficulty running and that the toe of Olivia's left shoe was wearing abnormally.   In January 2020, Lindsay sought a physical therapy referral for Olivia. Up until that point, Olivia had been participating in physical education class, lacrosse, and other sports. On January 14, 2020, Olivia was seen by a physical therapist, who noted weakness in Olivia's left foot and ankle. Due to these findings, Olivia was seen by a pediatric neurologist on January 21, 2020, who diagnosed Olivia with a peroneal nerve injury. Olivia underwent a peroneal nerve decompression surgery in March 2020.[4]

¶10    In January 2021, the Stubitsches commenced this action for medical negligence against Reeder, alleging that Reeder was negligent in providing health care services to Olivia and that his negligence proximately caused the peroneal nerve injury and related pain and impairment. In September 2021, the Stubitsches retained Klein, an orthopedic surgeon with over 36 years of medical practice

---

[4] Olivia underwent an additional surgery for this condition in August 2022, after this action was commenced.

experience, to serve as their expert witness. Klein authored an expert report in January 2022, summarizing the materials he reviewed and providing his opinion as to the cause of Olivia's peroneal nerve injury. Klein based his opinion on his specialized medical knowledge and experience, specifically in the field of general orthopedics. The report states in pertinent part:

> [I]t is my opinion that it is probable that [Olivia] Stubitsch sustained a compression injury to her left common peroneal nerve just below the knee due to the knee brace and the tightening of the straps on the brace probably caused the peroneal nerve injury.... All opinions are given to a reasonable degree of medical certainty.

¶11 At his deposition in May 2022, Klein testified to the following: (1) the peroneal nerve injury was sustained in October or November 2017; (2) at the time the peroneal nerve injury was sustained, Klein would have expected to see "pain around the area of the peroneal nerve," "numbness on the top of the foot," "weakness in the foot," and/or "gait abnormalities," including "toe dragging"; (3) there was "no evidence that [Olivia] reported any symptoms consistent with the compression-based [peroneal nerve] injury" at the time Reeder was treating Olivia, but Olivia would have been experiencing acute symptoms during this late-2017 timeframe, so they must have been overlooked; (4) Reeder "failed to recognize [the] nerve injury that was present" at that time; and (5) none of this was reflected in any of Olivia's medical records until January 2020.

¶12 Klein further testified that he had never seen a pediatric patient sustain a peroneal nerve injury as a result of excessive compression from a brace and that there are a number of other conditions and injuries that could cause a peroneal nerve injury of the type suffered by Olivia. Klein testified that "this is one of those classic teachings in orthopedic surgery … whenever, … for example, if you have … a brace on and the person starts exhibiting … symptoms of a

peroneal problem, you immediately take the cast off, you immediately take the brace off." But, again, he also testified that there was no evidence in Olivia's medical records that Olivia exhibited any symptoms while wearing the brace, and the first time Olivia presented to a medical provider with acute symptoms of a peroneal nerve injury was January 2020.

¶13   Reeder moved for summary judgment on the ground that "[t]he evidence is insufficient as a matter of law to prove that any allegedly negligent acts or omissions by [Reeder] were a cause of injury to [Olivia]" because Klein's causation opinion is "based on pure speculation" and is therefore not "reliable" as required for the admissibility of expert testimony under WIS. STAT. § 907.02(1) and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Stubitsches opposed the motion, arguing that there is a sufficient basis for Klein's causation opinion. The circuit court stayed a decision on the motion and ordered Klein to appear for a *Daubert* hearing on the date of the final pretrial conference. When Klein did not appear for the hearing, the court determined that it would proceed with the *Daubert* analysis and summary judgment motion based on the record before it. Neither party objected to the court proceeding in this manner.

¶14   The circuit court granted Reeder's motion for summary judgment on the ground that Klein "fail[ed] to explain why his causation opinion applies reliable principles to sufficient facts and data." The court excluded Klein's testimony as inadmissible and dismissed the Stubitsches' complaint based on the Stubitsches' failure to present the reliable expert testimony that is "require[d]" for medical malpractice cases, citing *Carney-Hayes v. Northwest Wisconsin Home Care, Inc.*, 2005 WI 118, ¶37, 284 Wis. 2d 56, 699 N.W.2d 524.

¶15   This appeal follows.

7

## DISCUSSION

### I.  Applicable Standard of Review and Legal Principles

¶16    We first summarize the standard of review governing the Stubitsches' appeal of the circuit court's decision excluding Klein's opinion under WIS. STAT. § 907.02(1).  We then present the legal principles pertinent to the admissibility of proffered expert witness testimony.

### A.  Standard of Review

¶17    The issue that the parties brief on appeal is nominally the grant of summary judgment.  However, the parties do not dispute that summary judgment is appropriate if Klein's testimony is inadmissible.  As this court has explained, summary judgment is appropriate when the plaintiff is unable to produce expert testimony establishing a causal connection between the alleged negligence and the plaintiff's injury.  *See* ***Estate of Hegarty v. Beauchaine***, 2006 WI App 248, ¶154, 297 Wis. 2d 70, 727 N.W.2d 857 ("To establish causation in a medical malpractice case where the issues involve … medical matters, beyond the common knowledge or experience of jurors, testimony from medical experts is essential. '[T]he lack of expert testimony on the question of causation results in an insufficiency of proof[.]'" (citation omitted) (quoting ***Bruss v. Milwaukee Sporting Goods Co.***, 34 Wis. 2d 688, 696, 150 N.W.2d 337 (1967))).  Thus, this appeal requires that we review the circuit court's decision to exclude Klein's testimony as inadmissible because his opinion is unreliable.

¶18    "Appellate courts review a circuit court's decision to admit or exclude expert testimony under an erroneous exercise of discretion standard." ***State v. Giese***, 2014 WI App 92, ¶16, 356 Wis. 2d 796, 854 N.W.2d 687.  We are

"highly deferential" to the circuit court's discretionary decisions. ***State v. Shomberg***, 2006 WI 9, ¶11, 288 Wis. 2d 1, 709 N.W.2d 370. "As long as the circuit court 'examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion,' we will not disturb its ruling." ***Allsop Venture Partners III v. Murphy Desmond SC***, 2023 WI 43, ¶23, 407 Wis. 2d 387, 991 N.W.2d 320 (quoted source omitted).

### B. Admissibility of Expert Testimony

¶19 The admissibility of expert testimony is governed by WIS. STAT. § 907.02(1). ***Seifert v. Balink***, 2017 WI 2, ¶¶6-7, 372 Wis. 2d 525, 888 N.W.2d 816. Section 907.02(1) provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

¶20 WISCONSIN STAT. § 907.02(1) now mirrors Federal Rule of Evidence 702, which codified ***Daubert***, 509 U.S. 579 (1993). ***Seifert***, 372 Wis. 2d 525, ¶51. Before admitting expert testimony, the circuit court must "be satisfied that the testimony is reliable." ***Id.***, ¶¶58-59 ("***Daubert*** makes the [circuit] court a gatekeeper."). The Federal Rules Advisory Committee provided a list of nonexhaustive factors to guide the reliability analysis. ***Id.***, ¶63. These include:

> (1) Whether experts are "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying."

(2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion.

(3) Whether the expert has adequately accounted for obvious alternative explanations.

(4) Whether the expert "is being as careful as [the expert] would be in his regular professional work outside [the expert's] paid litigation consulting."

*Id.* (citations omitted) (quoting commentary following the 2000 amendment to Federal Rule of Evidence 702). However, the court is not required to consider these factors and has wide latitude to conduct its reliability analysis. *Id.*, ¶¶64-65.

¶21     Pertinent here, "experience-based expert evidence may pass muster under the reliability requirement," particularly in cases involving medical expert testimony. *Id.*, ¶¶67, 77-79. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.*, ¶73 (quoting Federal Rule of Evidence 702 Advisory Committee Note (2000)). "*Daubert*'s role of ensuring that the courtroom door remains closed to junk science is not served by excluding medical expert testimony that is supported by extensive relevant medical experience. Such exclusion is rarely justified in cases involving medical experts." *Id.*, ¶85 (footnote omitted). "The [circuit] court's gatekeeping function in regard to experience-based testimony, however, 'requires more than simply taking the expert's word for it.'" *Id.*, ¶74 (quoted source omitted). "[N]o matter how good experts' credentials may be, they are not permitted to speculate." *Giese*, 356 Wis. 2d 796, ¶19 (alteration in original; internal quotation marks omitted) (quoting *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010)).

## II. Analysis

¶22    On appeal, we understand the Stubitsches to argue that Reeder is not entitled to summary judgment because Klein's testimony establishes that there are genuine issues of material fact as to Reeder's negligence.  More specifically, the Stubitsches argue that the circuit court erred in determining that Klein's opinion is unreliable and, therefore, his testimony is inadmissible, because, the Stubitsches assert, the "substance [of Klein's opinion] is supported by the medical records …, the deposition transcripts …, and [Klein's] 38-plus years of experience as a general orthopedist."  The Stubitsches assert that the court failed to consider Klein's methodology and instead "acted as a factfinder and substituted [the court's] judgment on causation."  We reject the Stubitsches' argument because the record provides a reasonable basis for the court's ruling and establishes that it properly exercised its discretion.  *See* ***State v. Hammer***, 2000 WI 92, ¶21, 236 Wis. 2d 686, 613 N.W.2d 629 ("If there was a reasonable basis for the court's determination, then we will not find an erroneous exercise of discretion.").

¶23    We conclude that the circuit court here "examined the relevant facts" submitted by the parties, properly conducted an analysis of Klein's testimony under WIS. STAT. § 907.02(1) and ***Daubert***, and used a "demonstrated rational process" to conclude that Klein's testimony is "little more than ipse dixit."  *See* ***Allsop***, 407 Wis. 2d 387, ¶23.  In performing its analysis, the court accepted as undisputed that Klein has the specialized knowledge and experience required by § 907.02(1).  With that assumption, the court focused on the reliability of Klein's opinion, and, by implication, on the methodology that he used to reach that opinion:

> In this case, Klein opines that Reeder caused Olivia's peroneal nerve injury in October or November 2017 by

> fitting her with a brace. As best the Court can tell, Klein's only explanation for why the brace must have caused the nerve injury is because "this is one of those classic teachings in orthopedic surgery, okay?" And, to explain why Reeder's November 27, 2017, examination of Olivia did not uncover any of the symptoms of the injury predicted by those classic teachings, Klein opines "it looks like he did not recognize the peroneal nerve problem …." An expert can sometimes ignore the facts of a particular case and recite the classic teachings of their field, but [the fact that an expert has] knowledge in a field does not also mean [that the] expert applied that knowledge to sufficient facts and data in reaching a reliable opinion.

(Ellipsis in original; citations omitted.)

¶24 As stated, Klein opined that the tightening of the brace in 2017 caused Olivia's peroneal nerve injury. He opined that the peroneal nerve injury was sustained and presented in 2017, but no one recognized it. He acknowledged that he saw no evidence of any symptoms of a peroneal nerve injury before 2020 in any of the records he reviewed, despite opining that Olivia would exhibit *acute* symptoms at the time she sustained the injury. He acknowledged that there are other potential causes of peroneal nerve injuries sustained by pediatric patients. The only explanation he gave to support his conclusion that the brace caused Olivia's peroneal nerve injury is that "if you have a … brace on and the person starts exhibiting, you know, symptoms of a peroneal problem, … you immediately take the brace off. It's one of these -- one of these common things that you are taught in orthopedic surgery." However, as the circuit court explained, there is no evidence that Olivia exhibited symptoms of a "peroneal problem" when she was wearing the brace in 2017, and, therefore, we are asked to "'simply tak[e] the expert's word for it.'" *See Seifert*, 372 Wis. 2d 525, ¶74 (quoted source omitted). In other words, Klein did not "'explain … why [his] experience is a sufficient basis for [his] opinion, and how that experience is reliably applied to the facts.'" *See id.*, ¶73 (quoted source omitted). Klein "'unjustifiably extrapolated from an

accepted premise,'" *i.e.*, that braces can cause peroneal nerve injuries, "'to an unfounded conclusion'": that this brace caused a peroneal nerve injury in 2017 despite the undisputed fact that no one noticed the symptoms for two years. *See id.*, ¶63 (quoted source omitted).

¶25    In sum, we conclude that the record supports the circuit court's exercise of discretion in excluding Klein's expert testimony under WIS. STAT. § 907.02(1) on the ground that his opinion is unreliable. And because, as explained above, the lack of expert testimony on causation in a medical negligence case "results in an insufficiency of proof," Reeder is entitled to summary judgment dismissing the complaint. *See Hegarty*, 297 Wis. 2d 70, ¶154 (quoting *Bruss*, 34 Wis. 2d at 696); *see also Kaufman v. State St. Ltd. P'ship*, 187 Wis. 2d 54, 58-59, 522 N.W.2d 249 (Ct. App. 1994) ("'[I]t is the burden of the party asserting a claim on which it bears the burden of proof at trial to make a showing sufficient to establish the existence of an element essential to that party's case.'" (quoted source omitted)).

¶26    In the alternative, the Stubitsches argue that summary judgment was improperly granted because the circuit court failed to give adequate notice of the issue of reliability as a basis for determining that Klein's opinion is inadmissible, thereby preventing either party from adequately briefing or supplying evidence on that issue. The Stubitsches assert that Reeder's motion for summary judgment addressed the admissibility of Klein's testimony on the ground that his opinion is based on speculation, not that his opinion is unreliable, and that speculation and reliability are distinct concepts. The Stubitsches argue that this shift from speculation to unreliability resulted in the motion decided by the court being a different motion from that which was brought by Reeder. The record soundly refutes this argument.

¶27 Reeder's brief in support of his motion for summary judgment squarely raised the issue of reliability. Reeder argued that Klein's opinion "is inadmissible because it is not 'reliable' as defined by WIS. STAT. § 907.02(1) and interpretive case law [including **Daubert**]." While one of the headings in Reeder's brief stated that "the causation opinion by the plaintiffs' expert is purely speculative," the substance of that section argued that Klein's testimony is not admissible because his opinion is unreliable. In that section, Reeder argued that "[i]n order for Dr. Klein's opinions to be admissible at trial, they must be … reliable." Reeder then contended that Klein's causation opinion "is *not* admissible because it is not reliable. Dr. Klein's [causation] opinion is based on nothing more than his own speculative *ipse dixit*." The Stubitsches' brief responded to this argument by explaining that Klein's medical experience constitutes a reliable basis for his opinion, citing **Seifert**, 372 Wis. 2d 525, ¶77, and referencing **Daubert** and its admissibility analysis. Indeed, the word "reliable" or some variation thereof was used fourteen times in Reeder's brief and six times in the Stubitsches' brief.

¶28 In response to this briefing on the summary judgment motion, the circuit court issued an order on October 2, 2023, requiring Klein to appear for a **Daubert** hearing. In this order, the court unambiguously stated that it would be examining whether Klein's opinions are admissible under the standard set out in WIS. STAT. § 907.02(1), that is, "if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case," in order to rule on the summary judgment motion. The court proceeded to rule on exactly this issue.

¶29 In other words, the Stubitsches' alternative argument that the circuit court "sua sponte" raised the WIS. STAT. § 907.02(1) reliability issue lacks any

basis in the record. The court ruled on that issue, which was squarely put before it by Reeder, of which both Reeder's brief and the court's scheduling order gave the Stubitsches notice, and to which the Stubitsches attempted to respond in their opposing brief.[5]

## CONCLUSION

¶30    For the reasons stated above, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[5] The Stubitsches cite *Larry v. Harris*, 2008 WI 81, 311 Wis. 2d 326, 752 N.W.2d 279, in support of their argument, but that case is easily distinguished. In *Harris*, our supreme court held that the circuit court erred when it sua sponte ruled on a summary judgment motion without providing the parties an opportunity to brief the issues. *Id.*, ¶¶43-45. Here, as explained in the text, the circuit court ruled on Reeder's summary judgment motion after the parties had an adequate opportunity to brief the issues.